[No. H001674. Sixth Dist. Mar. 2, 1988.]

LUMBERMENS MUTUAL CASUALTY COMPANY, Plaintiff and Appellant, v.
HEATHER LEIGH VAUGHN, a Minor, etc., et al., Defendants and Respondents.

■■■■■■■■■■■■■■■■

■■■■■■■■■■■

■■■■■■■■■■■■■■

**COUNSEL**

Rankin, Oneal, Center, Luckhardt & Lund and Mark G. Hyde for Plaintiff and Appellant.

Craig G. McIntosh, Low, Ball & Lynch, David B. Lynch and John P. Walovich for Defendants and Respondents.

**OPINION**

**BRAUER, J.**—Lumbermens Mutual Casualty Company (hereinafter designated the Carrier) brought an action for declaratory relief against its insured and other named defendants. In the action Carrier claimed that a homeowner's policy it had issued provided no coverage for an accident in which the insured's wife was killed. The court below rendered judgment on the pleadings in favor of the defendants and against the Carrier. We reverse with directions.

## I. BACKGROUND

### A. *The Accident*

In August of 1983 defendant Jeffrey Leep rented a garden tractor from defendant A-1 Rental Center (hereinafter designated Rental). Sandra Leep,

Jeffrey's wife, was operating the tractor on the Leep premises on August 7, 1983. While she was thus engaged the tractor overturned and killed her.

## B. *The Rental Agreement*

The reverse side of the rental agreement contained printed provisions designed to protect Rental from liability for accidents. For example, paragraph 5 read in pertinent part: "CUSTOMER shall immediately report any accident involving the rental equipment to COMPANY and deliver to COMPANY every process, pleading, notice, or paper of any kind whatsoever received by CUSTOMER relating to any claim, suit, or proceeding connected with any accident or event involving the equipment. CUSTOMER shall not aid or abet the assertion of any such claim, suit, or proceeding, and shall cooperate fully with COMPANY in investigating and defending same."

Paragraph 7 read thus: "COMPANY shall not be liable for loss, damage, or injury to property or the person of CUSTOMER or any other person arising out of the use or operation of the equipment rented. CUSTOMER shall assume all risk of such loss or damage, waive all claims therefore against COMPANY, and defend, indemnify, and hold COMPANY harmless from all claims arising out of such loss or damage."

Paragraph 8 provided: "CUSTOMER shall defend, indemnify, and hold COMPANY harmless from and against any and all losses, liabilities, damages, injuries, claims, demands, costs, and expenses arising out of, or connected with, the possession or use of the equipment during the rental term, including but not limited to, any and all claims of, or liabilities to, third parties, arising out of the operation, use, abandonment, conversion, secretion, concealment, or unauthorized sale of the equipment, or the confiscation of the equipment by any governmental authority for unlawful improper use of said equipment."

## C. *The Carrier's Policy*

At the time of the accident Jeffrey Leep and his wife were the named insureds in a homeowner's insurance policy issued by Carrier. Like most such policies, it purported to provide broad coverage but contained a great number of exclusions.

As to personal liability coverage, the policy in pertinent part read thus: "If a claim is made or a suit is brought against any insured for damages

because of bodily injury or property damage caused by an occurence to which this coverage applies, we will: [¶] 1. pay up to our limit of liability for the damages for which the insured is legally liable; and [¶] 2. provide a defense at our expense by counsel of our choice, even if the allegations are groundless, false or fraudulent."

The policy specifically excluded from personal liability coverage any bodily injury or property damage arising out of the "ownership, maintanance, use, loading or unloading of motor vehicles *or all other motorized land conveyances,* including any trailers, owned or operated by or *rented or loaned to any insured,*" or out of "entrustment by the insured of a motor vehicle *or any other motorized land conveyance to any person.*" (Italics added.) But this "motorized land conveyance" exclusion had its limits, because the policy further provided that the exclusion did *not* apply to "a motorized land conveyance designed . . . for the maintenance of an insured location which is: [¶] (a) not designed for travel on public roads; and [¶] (b) not subject to motor vehicle registration." The garden tractor involved in this case fit the last-quoted description.

The policy also excluded from personal liability coverage "bodily injury to you and any insured within the meaning of part a. or b. of Definition 3, 'insured.'" According to definition 3, " 'insured' means you and the following residents of your household: [¶] a. your relatives; [¶] b. any other person under the age of 21 who is in the care of any person named above." For the sake of simplicity we shall hereinafter designate this exclusion as the "family exclusion."

D. *Leep's Action*

In his capacities as an individual, as guardian ad litem for his minor daughter Heather Leigh Vaughn, and as administrator of his wife's estate, Leep sued for damages for the wrongful death of his wife (Santa Clara County Super. Ct. action No. 539948). Among the named defendants were the manufacturer of the tractor, the distributor of the tractor, and Rental. Rental filed a cross-complaint against Leep for indemnity, based upon the express indemnity provisions contained in the rental agreement. Leep tendered his defense on the cross-complaint to Carrier. Carrier agreed to provide a defense, but reserved its right to seek an independent determination of its obligation to defend and indemnify Leep. Carrier than instituted the present action for declaratory relief (Santa Clara County Super. Ct. action No. 559348).

## E. *Carrier's Action*

Carrier's complaint named as defendants all of the parties to Leep's action, including Leep himself. But in pertinent part the complaint alleged an actual controversy only between Carrier and Leep. Specifically, the complaint alleged that Carrier "contends it has no obligation to insure defendant against damages caused by bodily injury to residents of defendant's household, nor against liability on the rental contract. Defendant JEFFREY B. LEEP disputes these contentions and contends that plaintiff is obligated to indemnify defendant for damages caused by bodily injury arising out of the subject incident." The complaint sought a judicial declaration "as to whether [Carrier] is obligated to indemnify defendant JEFFREY B. LEEP for damages caused by bodily injury to its insureds and for liability under the rental contract." To this complaint all of the named defendants filed general denials.

Carrier took discovery, and then moved for summary judgment. The basic thrust of the motion was simple: As a matter of law, the "family exclusion" in Carrier's policy forbade liability coverage, and therefore Carrier was not obligated to defend or indemnify Leep. This pristine thrust was muddied when Carrier admitted, in its moving papers, "that to a limited extent coverage is determined by the reasonable expectations of the insured." In response Leep and Rental focused on the gunk, and argued that Leep had reasonably expected to be defended and indemnified. In this posture the matter was submitted for decision to Judge A of the Santa Clara County Superior Court. In a minute order Judge A ruled: "Motion for Summary Judgment on behalf of plaintiff denied. Facts 10 and 11 are in dispute." Facts 10 and 11 both dealt with Leep's alleged expectations of his insurance coverage, and neither concerned any issue of ambiguity in the provisions of Carrier's policy.

On October 28, 1985 (the date apparently set for trial), the lawyers representing Carrier, Leep, and Rental all presented trial briefs to Judge B of the Santa Clara County Superior Court. The briefs were filed in open court, and Carrier's counsel revealed that two of the named defendants—the manufacturer and the distributor of the tractor—had been dismissed from the action with Carrier's consent. Thus the personae of this action dwindled to Carrier as plaintiff, Leep and Rental as defendants. Court and counsel engaged in colloquy, in the course of which defense counsel somehow persuaded Judge B that Judge A's earlier ruling necessarily meant that Carrier's policy was ambiguous in its terms, and therefore afforded coverage for the accident. Judge B's comments indicate his thinking: "Since Judge

[A] could have decided in this case that the contract is clear and unambiguous, and that there is no coverage, but he did not, and he did specify as material disputes between the parties, the reasonable expectations, it follows that he decided that the contract is ambiguous. [¶] Quite frankly, even had he not decided that and that question were presented to me as a matter of law, . . . I would have decided it the same way, so I find that the only issue left before me is the issue of reasonable expectation." Further: "I find that the question of ambiguity is not before me. That that was necessarily decided by Judge [A] in his ruling on the motion for summary judgment. [¶] Therefore, the issue before me is whether or not coverage in this case was provided to the insured based upon the reasonable expectation of the insured." ■ But an order denying summary judgment is not a final judgment and is not res judicata. (*De La Pena* v. *Wolfe* (1986) 177 Cal.App.3d 481, 485 [223 Cal.Rptr. 325].) It is therefore not binding on the judge conducting the trial.

Then Leep's counsel moved for judgment on the pleadings, and Rental's counsel joined in the motion. After further discussion the matter was continued to the following day, October 29. On that date the court learned that Leep and Rental had entered into a stipulated judgment in the earlier lawsuit, i.e., action No. 539948. Carrier's counsel described the stipulation as follows: "The settlement yesterday is a good example of a collusive act, in my opinion. The cross-complaint for express indemnity, there's an—only that, not on the comparative indemnity, and express indemnity apparently is stipulated judgment which I heard on the record yesterday but there's no transcript of yet wherein A-1 [Rental] receives a stipulated judgment against the insured [Leep] for a hundred and twenty-five thousand dollars with a covenant not to execute thus protecting the insured."

Despite the foregoing representation, Judge B granted judgment on the pleadings in favor of Leep and Rental. He ultimately signed a judgment which denied Carrier relief and specified that Carrier "is obligated to defend and indemnify defendant JEFFREY LEEP on the aforementioned Cross-complaint . . . ." Implied in the judgment, although not expressly stated, were the notions (1) that the "family exclusion" in the policy was ambiguous, and therefore (2) that Carrier's policy afforded coverage for the accident in question. From that judgment Carrier appeals.

## II. CONTENTIONS ON APPEAL

The arguments advanced by the parties on appeal are varied and intricate. Paraphrased, they run thus: Appellant Carrier contends that the "fam-

ily exclusion" contained in its policy is clear, unambiguous, and enforceable, and therefore the policy does not afford liability coverage for the death of Leep's wife. In support of that proposition Carrier cites cases involving automobile insurance. Carrier further contends that the trial court erred in granting judgment on the pleadings without first considering extrinsic evidence of Leep's reasonable expectations of coverage.

Respondents Leep and Rental contend (1) that automobile insurance cases furnish no applicable precedent for this case, which involves a homeowner's policy; (2) that the "family exclusion" clause is ambiguous when read with other provisions of the policy; and (3) the trial court committed no error in granting judgment on the pleadings without first indulging in an evidentiary hearing.

### III. SCOPE OF REVIEW

■ "When a motion for judgment on the pleadings has the purpose and effect of a general demurrer, the facts alleged in the pleading attacked must be accepted as true, and the [trial] court may also consider matters subject to judicial notice." (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 630 [99 Cal.Rptr. 393].) Ordinarily such a motion is confined to the face of the challenged pleading; but when a written instrument is attached to the pleading and properly incorporated therein by reference, the court may examine the exhibit and treat the pleader's allegations of its legal effect as surplusage. (*Cohen* v. *Ratinoff* (1983) 147 Cal.App.3d 321, 327 [195 Cal.Rptr. 84].)

■ In this case Carrier did not attach a copy of its policy to the complaint for declaratory relief. The complaint merely alleged the legal effect of the policy. But Carrier attached a certified copy of the policy, marked Exhibit A, to its trial brief. Rental, in its trial brief, quoted verbatim from portions of the policy. The policy itself was thus before the trial court when the motion for judgment on the pleadings was first raised, and Judge B specifically stated on the record without objection and, indeed, with the evident approval of both sides, that he had received and considered Carrier's and Rental's trial briefs. Consequently our review includes an examination of the policy's provisions.

■ On appeal from a judgment on the pleadings, the case is reviewed in the same way as a judgment of dismissal entered following the sustaining of a general demurrer. (*Gill* v. *Curtis Publishing Co.* (1952) 38 Cal.2d 273, 275 [239 P.2d 630]; *Peters* v. *State of California* (1987) 188 Cal.App.3d 1421, 1424 [234 Cal.Rptr. 117].) "While it is the duty of a reviewing court, in

most cases, to indulge in every reasonable presumption in favor of sustaining the trial court, substantially the reverse is true when [the] plaintiff appeals from a judgment on the pleadings." (*Crain* v. *Electronic Memories & Magnetics Corp.* (1975) 50 Cal.App.3d 509, 512 [123 Cal.Rptr. 419].)

## IV.  DISCUSSION

■   It is settled in this state that "the doctrine of reasonable expectation of coverage comes into play *only* where there is an ambiguity in the policy." (*Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 328 [183 Cal.Rptr. 695], italics added; accord, *Morris* v. *Atlas Assurance Co.* (1984) 158 Cal.App.3d 8, 17 [204 Cal.Rptr. 95].) ■   Consequently before reaching the question of reasonable expectation, we must first determine whether the "family exclusion" provision in Carrier's policy is ambiguous.  ■   Where, as here, no evidence was presented in aid of the policy's language, the construction of that language is purely a matter of law. (*Employers Cas. Ins. Co.* v. *Foust* (1972) 29 Cal.App.3d 382, 385 [105 Cal.Rptr. 505].) We are not bound by the trial court's interpretation of the policy. (*Russell* v. *Bankers Life Co.* (1975) 46 Cal.App.3d 405, 413 [120 Cal.Rptr. 627].)

■   We have quoted Carrier's "family exclusion" in part I of this opinion. That exclusion is pellucid and unequivocal: it expressly provides that Carrier shall afford no liability coverage for injuries suffered by the insured (Leep) or his relatives. Carrier correctly points out that in the area of automobile insurance, similar "family exclusion" clauses have repeatedly been upheld by this state's Supreme Court and its Courts of Appeal. (See, e.g., *Farmers Ins. Exchange* v. *Cocking* (1981) 29 Cal.3d 383, 387 [173 Cal.Rptr. 846, 628 P.2d 1], and cases there cited.) " '[T]he concept of a household exclusion is a common one which has long enjoyed judicial support. Its purpose is to prevent suspect inter-family legal actions which may not be truly adversary and over which the insurer has little or no control. Such an exclusion is the natural target for the insurer's protection from collusive assertions of liability. . . .' (*United Farm Bur. Mut. Ins. Co.* v. *Hanley* (1977) 172 Ind.App. [329] [360 N.E.2d 247, 252], fns. omitted . . . ," cited and quoted with approval in *Farmers Ins. Exchange* v. *Cocking, supra,* 29 Cal.3d at p. 389.)

Leep and Rental begin by noting that "family exclusion" clauses are statutorily authorized in Insurance Code section 11580.1, subdivision (c)(5), which deals specifically with automobile insurance policies. They further note that the Insurance Code contains no equivalent provision relating to

homeowner's policies. Therefore, they argue, automobile insurance cases furnish no applicable precedents for the case before us, and "this court should not make new law by holding that Insurance Code section 11580.1(c)(5) applies to homeowners insurance."

We are not persuaded. This state's Supreme Court has held that Insurance Code section 11580.1, subdivision (c)(5) "permits, *but does not require,* automobile insurers to continue to exclude coverage for bodily injury liability to insureds (usually, family household members)." (*Farmers Ins. Exchange* v. *Cocking, supra,* 29 Cal.3d at p. 389, italics in original.) "[¶] The decision of a carrier whether to offer, or of a prospective insured to accept, the various kinds of liability insurance is one which the Legislature reasonably might well leave to the insurer and insured, respectively. To hold otherwise and, in effect, to require family member liability coverage against the better judgment of the contracting parties would constitute an unprecedented judicial interference into private contractual and economic arrangements . . . ." (*Id.,* at pp. 390-391.)

If this principle applies to automobile insurance, we can see no reason why it should not equally apply to homeowner's insurance. Therefore the fact that the Insurance Code makes no mention of "family exclusions" in homeowner's policies does not preclude a carrier from insisting upon, or an insured from accepting, such an exclusion. The Fourth Appellate District, confronted with a "family exclusion" in a homeowner's policy, wrote this: "We can find no authority either in court decision or legislative enactment to suggest this exclusion in a homeowner's policy is against public policy and, indeed, we do not believe it is." (*State Farm Fire & Cas. Co.* v. *Alstadt* (1980) 113 Cal.App.3d 33, 40 [169 Cal.Rptr. 593]; accord, *State Farm Fire & Cas. Co.* v. *Clendening* (1983) 150 Cal.App.3d 40, 43 [197 Cal.Rptr. 377].) We agree.

Leep and Rental next contend that the "family exclusion" in Carrier's policy is ambiguous because it conflicts with the "motorized land conveyance" provisions in the same policy. We have quoted the "motorized land conveyance" provisions in part I of this opinion. The argument seems to run thus: The policy provides liability coverage for injury or death sustained when a "motorized land conveyance" is (a) not designed for travel on public roads, (b) not subject to motor vehicle registration, and (c) used for the maintenance of an insured location. The garden tractor which killed Leep's wife fit that description. The "motorized land conveyance" provisions create no coverage exception for the insured or members of his family. Therefore the "motorized land conveyance" provisions conflict with the

"family exclusion" in the policy, and that conflict should be resolved against the carrier and in favor of coverage.

This argument ignores the essential difference between the "motorized land conveyance" provisions and the "family exclusion." They do not address the same topic. Under the "motorized land conveyance" provisions, coverage is afforded when an injury is caused by a specified type of instrumentality used in a specified way. The "family exclusion," on the other hand, concerns the persons to whom coverage is provided. Carrier's insurance policy plainly excludes liability coverage for any injury to any insured person. Consequently we find no inconsistency where the policy in effect says (a) there is liability coverage for personal injury caused by a garden tractor, (b) unless the injury is to a resident member of the insured's family. "The insurance carrier need not insure risks arising from intrafamily torts unless it chooses to do so." (*State Farm Fire & Cas. Co.* v. *Clendening, supra,* 150 Cal.App.3d at p. 43.)

But Leep and Rental both contend that the instant action does not involve a true intrafamily tort. They claim that Carrier's exposure arises from the indemnification provisions in the rental agreement, rather than from a suit for damages instituted by one family member against another. In our view this is a distinction without a difference.

A "family exclusion" in an insurance policy is designed to protect the insurance carrier from collusion both by and between family members. Whether a family member colludes with another family member, or with an adversary who is not a family member, the result is the same: the insurance carrier becomes the victim. Therefore where, as here, the "family exclusion" is plain and unambiguous, it should not be disregarded merely because a family member sides with a party who is not.

We cannot say, and we do not hold, that actual collusion occurred between Leep and Rental. But certainly the circumstances surrounding this case provided Leep with every incentive for collusion. In his underlying action (No. 539948) Leep was both plaintiff and cross-defendant. Leep stipulated that Rental would recover $125,000 on its cross-complaint against him. If he planned to pay those damages out of Carrier's pocket, he would have a direct financial stake in the defeat of Carrier's declaratory relief action (No. 559348) against Rental. Furthermore, Carrier would be deprived of Leep's assistance and cooperation, to which Carrier was entitled by express provisions of the policy.

In view of the foregoing we need not reach the question of expectation of coverage.

## V.   DISPOSITION

The judgment is reversed. The trial court is directed to enter a new and different judgment in favor of plaintiff Lumbermens Mutual Casualty Company, and against all remaining defendants in action No. 559348. Lumbermens shall recover its costs on appeal.

Agliano, P. J., and Capaccioli, J., concurred.