[No. H003239. Sixth Dist. Apr. 26, 1989.]

UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff and Respondent, v.
HARRY WILLIAM BAGGETT et al., Defendants and Appellants.

**COUNSEL**

Rankin, Oneal, Center, Luckhardt & Lund, Mark G. Hyde and John S. Crosley for Defendants and Appellants.

Gassett, Perry & Frank and L. Christian Spieller for Plaintiff and Respondent.

**OPINION**

**AGLIANO, P. J.—**

1. *Introduction*

Plaintiff United Services Automobile Association (insurer) filed this action against defendants Harry Baggett (insured) and Christina and Hyun Ku Lee (heirs) seeking a declaration of insurer's obligation under an automobile insurance policy. Heirs had filed an underlying action against insured and another driver for the wrongful death of their decedent and for damage to decedent's car following two consecutive automobile collisions. Here insured and heirs appeal from a judgment favoring insurer. They specifically challenge a summary adjudication that "only one automobile accident occurred within the meaning of said insurance policy." Heirs also challenge a determination after a court trial that the policy unambiguously limits maximum bodily injury coverage to $100,000 per person and $300,000 total per accident.

Insured and heirs assert either there were two accidents according to the policy's limits of liability or these policy provisions are ambiguous and

should be interpreted to provide the higher coverage reasonably expected by insured. We reject their contentions and affirm the judgment.

## 2. *Undisputed facts*

The following facts emerge as undisputed from a review of insurer's motion for either summary adjudication or judgment and separate oppositions by insured and heirs.[1]

Shortly before midnight on October 17, 1984, insured's vehicle struck the decedent's vehicle from behind on an expressway. After driving a short distance farther, decedent stopped her vehicle in the center lane and insured did likewise. They both left their vehicles and briefly discussed the accident. Within a minute, a third vehicle struck insured's vehicle from behind, driving insured's vehicle into decedent and her vehicle and killing decedent. The police prepared two accident reports.

In the underlying action, heirs alleged that insured was negligent in (1) driving his vehicle, (2) stopping it without displaying hazard or operating lights or setting out reflective devices or flares or directing traffic around the stopped vehicles, and (3) guiding decedent to a position of danger.

At the time of the collisions, insured had an auto insurance policy from insurer providing liability coverage in the following pertinent terms. "We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." A part captioned "limit of liability" states: "The limit of liability shown in the Declarations for 'each person' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for 'each person', the limit of liability shown in the Declarations for 'each accident' for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident. The limit of liability shown in the Declarations for 'each accident' for Property Damage Liability is our maximum limit of liability for all damages to all property resulting from any one auto accident. This is the most we will pay regardless of the number of: [¶] 1. Covered persons; [¶] 2. Claims made; [¶] 3. Vehicles or premiums shown in the Declarations; or [¶] 4. Vehicles involved in the auto accident. [¶] We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability."

---

[1] We find no separate statement by heirs in opposition to insurer's separate statement of undisputed facts, but this does not appear to have been the basis for granting summary adjudication. (See Code Civ. Proc., § 437c, subd. (b).)

The declarations page states, among other things, the following liability coverage and limits of liability:

"BODILY INJURY      EA PER $100,000      EA ACC $300,000
PROPERTY DAMAGE      EA ACC $ 25,000."

Insured believed the policy provided for treatment of circumstances like those described above as two accidents and for coverage of $300,000 for each accident. He did not understand what "EA PER $100,000" meant.

### 3. Standard of review

Insured and heirs criticize the reasoning of the law-and-motion judge preceding his summary adjudication. ■ On appeal, we are concerned with the validity of the summary judgment ruling, not its reasoning. (*Snider v. Snider* (1962) 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709]; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Malmstrom v. Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 308 [231 Cal.Rptr. 820].) This is particularly true when we review a summary adjudication interpreting an insurance policy based on undisputed extrinsic evidence. "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same . . . analysis required of the trial court. (Code Civ. Proc., § 437c . . . .)" (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) ■ Interpretation of the insurance policy presents a question of law which we answer independently because the trial court's interpretation did not depend on conflicting extrinsic evidence. (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 429-430 [296 P.2d 801, 57 A.L.R.2d 914]; *Bareno v. Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]; *Lumbermens Mutual Casualty Co. v. Vaughn* (1988) 199 Cal.App.3d 171, 179 [244 Cal.Rptr. 567].) It is a question of law whether an insurance policy is ambiguous by virtue of being susceptible to two or more reasonable interpretations. (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].)

### 4. General principles of insurance policy interpretation

■ *Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 806-807 [180 Cal.Rptr. 628, 640 P.2d 764], articulates established principles of insurance policy interpretation, including: "Words used in an insurance policy are to be interpreted according to the plain meaning which a lay[person] would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." (*Id.* at

p. 807; accord *Hyer* v. *Inter-Insurance Exchange, etc.* (1926) 77 Cal.App. 343, 347 [246 P. 1055].) " 'Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer. [Citations.]' . . . '[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. . . . [T]hus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." . . .' " (*Reserve Insurance Co., supra,* 30 Cal.3d at p. 808.)

Insurance policy terms are construed in the context of the policy and the circumstances of the case and should not be found ambiguous in the abstract. (*Producers Dairy Delivery Co., supra,* 41 Cal.3d 903, 916, fn. 7; *Blumberg* v. *Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286, 1296 [238 Cal.Rptr. 36].) Courts become interested in an insured's reasonable expectations of coverage " 'only where there is an ambiguity in the policy.' [Citations.]" (*Lumbermens Mutual Casualty Co., supra,* 199 Cal.App.3d at p. 179, italics omitted; cf. *Producers Dairy Delivery Co., supra,* 41 Cal.3d 903, 912.)

5. *Interpretation of coverage limitation for "any one auto accident"*

■ The principal issue on appeal is how to interpret the insurance policy limitation of liability coverage to specified maximums "for all damages . . . resulting from any one auto accident."

The leading California case on interpretation of a similar policy limitation is *Hyer* v. *Inter-Insurance Exchange, etc., supra,* 77 Cal.App. 343. There the insured's vehicle collided with one car, sustained broken steering, and collided with another car. (*Id.* at pp. 345-346.) In issue was the interpretation of an insurance policy maximum limit of liability "with respect to claims . . . arising from one accident . . . ." (*Id.* at p. 345, italics omitted.)

*Hyer* contains the following reasoning. "The word 'accident' probably has been discussed in adjudications as often as any other word in the English language. It is not a technical term, with a clearly defined meaning, and it has been used in more than one sense." (77 Cal.App. at p. 348.) "[A]s commonly used in liability insurance policies, the word 'accident' is predicated of an occurrence which is the cause of the injury. That is to say, as used in liability insurance contracts the word is employed to denote the cause, rather than the effect." (*Id.* at p. 349, italics added.) "Where . . . one negligent act or omission is the sole proximate cause . . . there is, as a general rule, but one accident, even though there be several resultant injuries or losses." (*Id.* at p. 350.) "That part of the continuous sequence of

events which embraces the second collision in this case . . . may well be described . . . as 'the incident of the accident.'" (*Id*. at p. 351.) In the context of the insurance policy's limits of liability, the parties apparently contemplated that "one accident" could involve two or more vehicles. (Cf. *id*. at pp. 352-354.)

*Hyer* exemplifies the prevailing interpretation of the terms "accident" and "occurrence" in insurance policy provisions limiting liability, namely as a reference to the proximate cause of unexpected damage. (See Annot. (1957) 55 A.L.R.2d 1300; compare *Safeco Ins. Co. of America* v. *Simmons* (N.D.Cal. 1986) 642 F.Supp. 305, 308—one "occurrence" under California law where one truck in passing another forced it into insured's vehicle; *Truck Insurance Exchange* v. *Rohde* (1956) 49 Wn.2d 465 [303 P.2d 659, 663, 55 A.L.R.2d 1288]—one "occurrence" and one "accident" where insured negligently drove car over center line and collided consecutively with three motorcycles; *Olsen* v. *Moore* (1972) 56 Wis.2d 340 [202 N.W.2d 236, 241]—one "occurrence" where insured negligently drove car over median and collided consecutively with two other cars; *Kansas Fire and Cas. Co.* v. *Koelling* (Mo.Ct.App. 1987) 729 S.W.2d 251, 252-253—one "accident" where insured's car in passing another struck a truck and almost simultaneously struck the passed car; with *Liberty Mutual Insurance Co.* v. *Rawls* (5th Cir. 1968) 404 F.2d 880, 881—two "accidents" where insured's vehicle rammed one car, but insured retained control in seconds before collision with second car; cf. *Hillman* v. *United States Liability Ins. Co.* (1982) 59 N.C.Ct.App. 145 [296 S.E.2d 302, 306-307]—one "collision" for purposes of insurance deductible provisions where insured's vehicle struck another from the rear and was struck a few seconds later by third vehicle which was driven into insured's vehicle by fourth vehicle.)

The rule is paraphrased in *State Farm Fire & Cas. Co.* v. *Kohl* (1982) 131 Cal.App.3d 1031, 1035 [182 Cal.Rptr. 720]: "In determining whether, under a particular set of circumstances, there was one accident or occurrence, the so-called 'causation' theory is applied. Hence a single uninterrupted course of conduct which gives rise to a number of injuries or incidents of property damage is one 'accident' or 'occurrence.' On the other hand, if the original cause is interrupted or replaced by another cause, then there is more than one 'accident' or 'occurrence.' (*Liberty Mut. Ins. Co.* v. *Rawls* [*supra*] 404 F.2d 880; . . . *Olsen* v. *Moore* [*supra*] [202 N.W.2d 236].)" (Italics omitted.)

Here, as in *Hyer*, "one auto accident" derives meaning from its use in context, though it is not specifically defined in the policy's "definitions" section. The maximum limits of liability are stated to apply regardless of the

number of claims made or vehicles involved in the auto accident. The policy thus contemplates one accident involving several vehicles.

Insured contends *Hyer* involved one negligent act causing both collisions, while here there were two negligent acts by insured, each causing one accident. This argument is divorced from the proximate cause analysis just described. If each negligent act or omission were regarded as a separate accident, there arguably would be numerous accidents based on heirs' characterization of insured's negligence.

We recognize that *Hyer* and the cases from other jurisdictions cited above may be characterized as involving simply one negligent act of driving by the insured. *Welter* v. *Singer* (1985) 126 Wis.2d 242 [376 N.W.2d 84] is factually closer. There a car knocked a bicyclist to the ground at an intersection. The bicyclist was dragged under the car while its driver stopped, started again across the intersection, stopped, drove again for another foot, and stopped. A second person took the driver's place and drove backward about 10 feet. (376 N.W.2d at p. 85.) The court rejected bicyclist's claim there were four accidents and occurrences within the meaning of two policies limiting coverage for "any one accident" and "one occurrence." (*Ibid.*) "If cause and result are so simultaneous or so closely linked in time and space as to be considered by the average person as one event, courts adopting the 'cause' analysis uniformly find a single occurrence or accident. . . . [¶] A common sense view of the facts discloses that any of appellant's injuries not inflicted by the first impact were the result of causes acting concurrently with and directly attributable to it. Hence, it was the predominant, active and continuing cause." (*Id.* at p. 87.)

Insured and heirs rely on *Kohl, supra,* 131 Cal.App.3d 1031, but, insofar as it is relevant, it actually suggests there was one accident. There the issue was whether an automobile liability policy or a homeowner's liability policy or both applied where the insured knocked a woman off her motorcycle with his truck and aggravated her injuries after leaving his vehicle by dragging her to safety. (*Id.* at p. 1034.) The court concluded this was "both an 'accident' within the purview of the auto policy and an 'occurrence' within the purview of the homeowner's policy. [¶] On the other hand, however, it is clear that under general tort principles, the additional injury suffered . . . as a result of the conduct of [the insured] in negligently 'dragging' her would be covered by the automobile policy, since that subsequent negligence would be a foreseeable consequence of the original accident. From that viewpoint it would follow that the subsequent additional injuries arose out of the 'use' and 'operation' of the motor vehicle [citation] thus invoking the coverage clause of the auto policy." (*Id.* at p. 1035, italics omitted.)

Thus, all of the motorcyclist's injuries were attributable to the initial collision.

The court proceeded to determine whether the homeowner's policy also applied, acknowledging "that coverage by an automobile liability policy does not ipso facto invoke the similarly worded exclusion clause of a homeowner's policy." (131 Cal.App.3d 1031, 1036.) It concluded both policies applied. "In our opinion the *Partridge* case [*State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 (109 Cal.Rptr. 811, 514 P.2d 123)] is indistinguishable in principle from the present case. In *Partridge,* the insured's use of the vehicle, as here, placed the victim in the position to be injured. The injury there, as here, resulted directly from an independent negligent act." (*Id.* at p. 1039.)

*Partridge, Kohl,* and similar cases involving potential applicability of several insurance policies do not identify each negligent act of the insured as a separate "accident" or "occurrence." Instead, they find applicable two or more types of liability insurance when damage results from two or more separate negligent acts or omissions by the insured.

Insured and heirs attempt to demonstrate "accident" is ambiguous by the following lengthy quotation from *Oil Base, Inc.* v. *Continental Cas. Co.* (1969) 271 Cal.App.2d 378 [76 Cal.Rptr. 594] (omitting italics and some embedded quotation marks): "Under California law, as stated in *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.* [(1959)] 51 Cal.2d 558, 563 . . . : [¶] 'No all-inclusive definition of the word "accident" can be given. It has been defined as a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured. [Citations.] It includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event. [Citations.] Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause. [Citation.]'

"In *Maxon* v. *Security Ins. Co.* [(1963)] 214 Cal.App.2d 603, 612 . . . , the court adopted the definition of accident, as found in *Hyer* [*supra*] 77 Cal.App. 343, 348-349 . . . : [¶] 'It is an "occurrence which produces hurt or injury." It also will be noticed that under this quite generally approved definition the word, as used in some classes of cases, denotes the cause of the hurt or loss; in other classes of cases it denotes the event, i.e., the unintended and unexpected loss or hurt apart from its cause; and in still other instances it may denote both the cause and the event, no attempt being made to discriminate between them. . . . But as commonly used in liability

insurance policies, the word "accident" is predicated of an occurrence which is the cause of the injury. That is to say, as used in liability insurance contracts, the word is employed to denote the cause, rather than the effect.'

"In the light of the quoted definitions, particularly the definition in *Hyer*, it is indisputable that the word 'accident' as used in liability insurance policies, is susceptible of several meanings. In the policy at bench, [insurer] chose not to define the word 'accident,' although the policy supplies other definitions. Uncertainty as to the intended meaning of the word 'accident' could have been clarified by the language of the exclusionary clause." (*Oil Base, Inc., supra,* 271 Cal.App.2d at pp. 387-388.)

The collection of definitions of "accident" in *Oil Base, Inc.* merely indicates the word's ambiguity in the abstract. We would commit the fallacy of equivocation to conclude such abstract ambiguity renders the word ambiguous as used in insurer's policy. (Engel, With Good Reason (1986) pp. 106-113.) "Accident" can be used unambiguously in an insurance policy despite its number of meanings in the abstract. (Cf. *Foremost Insurance Co.* v. *Eanes* (1982) 134 Cal.App.3d 566, 571-572 [184 Cal.Rptr. 635].)

The finding of ambiguity in *Oil Base, Inc.* does not compel a similar conclusion here because that case involved a different type of policy limitation, namely one concerning the location of the accident. Moreover, the limitation there was misplaced in the policy. (271 Cal.App.2d 378, 388-389.) We also observe the policy interpretation in *Oil Base, Inc.* has "been severely criticized" (*Foremost Insurance Co., supra,* 134 Cal.App.3d at p. 571) as "in direct conflict with all other California cases as well as the leading cases from other jurisdictions." (*Employers Casualty Co.* v. *Northwestern Nat. Ins. Group* (1980) 109 Cal.App.3d 462, 469 [167 Cal.Rptr. 296], and cases there cited.)

Contrary to heirs' argument, it is irrelevant to our insurance policy interpretation that the police filed two accident reports.

We reach the same conclusion as did the law and motion judge; namely, the insurance policy provisions limiting maximum liability "for any one auto accident" unambiguously contemplate two consecutive collisions as occurred here to be one accident.

*6. Interpretation of alternative policy limits for "each person" and "each accident"*

██ Heirs complain of the trial judge's denial of their request for an advisory jury and his conclusion there is no ambiguity in the policy

provisions limiting bodily injury coverage to $100,000 for each person up to a maximum of $300,000 for each accident. Heirs cite no authority requiring an advisory jury to assist a court's interpretation of an insurance policy.

■   These issues are intertwined. As noted above, whether an insurance policy is ambiguous is a question of law. (*Producers Dairy Delivery Co., supra,* 41 Cal.3d 903, 912.) Moreover, once an ambiguity is identified, it is a question of law, at least preliminarily, whether an insured's expectation of coverage is objectively reasonable. (Cf. *Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 329 [183 Cal.Rptr. 695]; *Hallmark Ins. Co.* v. *Superior Court* (1988) 201 Cal.App.3d 1014, 1019 [247 Cal.Rptr. 638]; *Producers Dairy Delivery Co., supra,* 41 Cal.3d 903, 913.) "[A] finding of ambiguity in policy language cannot be based on an unreasonable misunderstanding on the part of the insured." (*Ibid.*) A question of fact for a jury arises only where conflicting extrinsic evidence supports different, reasonable policy interpretations. (Cf. *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 291, 293 [85 Cal.Rptr. 444, 466 P.2d 996]; *Castro* v. *Fireman's Fund American Life Ins. Co.* (1988) 206 Cal.App.3d 1114, 1119 [253 Cal.Rptr. 833]; *Harabedian* v. *Zurich Ins. Co.* (1963) 218 Cal.App.2d 702, 705 [32 Cal.Rptr. 813].)

■   If the trial court correctly determined there was no ambiguity, it follows there was no need for a jury. Heirs contend: the policy declarations page is ambiguous where it describes the bodily injury limits of liability as "EA PER $100,000"; insured was reasonably confused, as he claimed to be, by these abbreviations; the ambiguity would have been resolved had the policy stated "EACH PERSON $100,000."

Any potential uncertainty about the abbreviations on the declarations page is resolved by reference to the policy's section entitled "limit of liability" explaining there were maximum limits for "each person" and "each accident." It is also apparent the total limit of $300,000 for "each accident" applies no matter how many persons suffered $100,000 worth of bodily injury.

We conclude the trial court correctly determined there was no ambiguity in these policy provisions and properly observed insured's testimony concerning his reasonable expectations was not "really very probative as to the issues because his subjective beliefs and understanding are not the test." Under the circumstances, a trial was unnecessary. (*Farm Air Flying Service* v. *Southeastern Aviation Ins. Services, Inc.* (1988) 206 Cal.App.3d 637, 641 [254 Cal.Rptr. 1].)

### 7. *Disposition*

The judgment is affirmed. Insurer is entitled to costs on appeal.

Cottle, J., and Elia, J., concurred.