## CIRCUIT COURT OF THE CITY OF ROANOKE

Anthony E. Early,
Yvonne J. Early,
Anthony E. Early, Jr.,
and Kia S. Early

v.

State Farm Mutual
Automobile Insurance Co.

July 9, 2007

Case No. CL05000474-00

BY JUDGE CHARLES N. DORSEY

This matter is before the Court on a Motion for Declaratory Judgment filed by Anthony E. Early, his wife Yvonne J. Early, and their two children Anthony E. Early, Jr., and Kia S. Early. The parties have submitted this matter to the Court to resolve all issues of law. The parties have stipulated all facts. After considering the parties' arguments and researching the applicable law, the Court denies the Plaintiff's Motion.

*Facts*

This case arises from a three-car collision on December 9, 2001. At the time of the accident, the three cars involved were traveling on Interstate 581 ("I-581") in the City of Roanoke. Anthony E. Early was driving his vehicle northbound on I-581 when Carol C. McKenna, who was driving in a southerly direction in the northbound lanes of I-581,[1] struck the Earlys' vehicle head-on. Subsequently, a third vehicle, driven by an unknown driver (who is referred to in this case as John Doe), collided with the rear of the Earlys' car. It is not exactly clear how much time passed between the two impacts. The Earlys' aver that the second collision occurred "[m]oments after the Early vehicle came to rest following [the first] collision." The Earlys' brief in support of their Motion for Declaratory Judgment states that the two collisions occurred "minutes apart." The parties stipulate that the second collision occurred "shortly after" the first. Stipulation at 2, ¶ 5.

Anthony E. Early's wife and two children, who were minors at the time, were passengers in the car during the accidents. As a result of one or both of these collisions, the Earlys received severe injuries; however, it is impossible to determine which collision caused which injuries. Nevertheless, the Earlys reached a settlement with McKenna and her insurance company whereby the Earlys were paid the policy limit of $300,000. As part of this same settlement, State Farm Mutual Automobile Insurance Co., the Earlys' insurer and Defendant in this case, paid the Earlys the policy limit of $100,000 for underinsured motorist coverage. Unfortunately, the Earlys' injuries were so severe that neither the amount paid on McKenna's behalf, nor the policy amount from State Farm was sufficient to cover their damages. Therefore, the Earlys have preserved potential claims of negligence against John Doe, who, as an unknown driver, is considered an uninsured motorist.

The Earlys have filed the present action asking the Court to decide whether they have a claim against John Doe so that State Farm will be required to pay uninsured motorist coverage under their policy. In response to the Earlys motion, State Farm asserts that the Earlys cannot recover uninsured motorist coverage because it cannot be shown that John Doe caused their injuries. State Farm asserts that John Doe was following the Earlys' vehicle

---

[1] I-581 is also referred to in the plaintiffs' Motion for Declaratory Judgment as Route 220. Route 220 merges into and becomes I-581 near downtown Roanoke.

"so closely that he drove into the rear of it immediately after the [Earlys'] vehicle had been struck head on by the [McKenna] vehicle." Reply Brief of Def. at 4. The determinative factor for the Court, for the purposes of insurance coverage, is whether the two collisions constituted a single occurrence or two.

In light of the posture of this case and the parties' stipulations, this opinion assumes that both McKenna and John Doe were negligent.

## Analysis

"Basically, there are two approaches to the problem, that is, the cause approach and the effect approach. Under the cause approach, the insured's single act of negligence is considered the occurrence from which all claims flow. Under the effect approach, each claim arising from an act of negligence of the insured is considered the occurrence." *American Cas. Co. of Reading v. Heary*, 432 F. Supp. 995, 997 (E.D. Va. 1977); *see also* Michael P. Sullivan, Annotation, *What Constitutes Single Accident or Occurrence within Liability Policy Limiting Insurer's Liability to a Specified Amount per Accident or Occurrence*, 64 A.L.R.4th 668, § 2a (2007) (listing a third approach based not on the cause or effect of the occurrence, but on the acts of the insured that triggered liability). Virginia follows the cause approach, which is the majority rule. *Heary*, 432 F. Supp. at 997; *accord Norfolk & Western Ry. v. Accident and Cas. Ins. Co. of Winterthur*, 796 F. Supp. 929, 936-37 (W.D. Va. 1992); *Sabol v. American Alliance Ins. Co.*, 34 Va. Cir. 172, 174-75 (Loudoun 1994), *and* Sullivan, 64 A.L.R.4th 668 at § 3. Accordingly, for the reasons set forth below, the Court finds that the plaintiffs' injuries and claims arose from a single occurrence. In this opinion, the words "accident" and "occurrence" are used interchangeably.

## 1. *The Cause Approach*

Under the cause approach, the Court must look at the causes of the damages for which insurance coverage is sought and decide whether, in light of those causes, the case involves a single accident or two. *See Heary*, 432 F. Supp. at 996-97 (finding a single occurrence because a single act of negligence caused three distinct single-car collisions); *Winterthur*, 796 F. Supp. at 937 (finding multiple occurrences because "a wide variety of machines in a number of different locations created a variety of sounds over the course of a number of years," which sounds injured the hearing of certain railroad employees who worked near these machines); *and Sabol*, 34 Va. Cir.

at 176-77 (involving a case in which a car struck two bicycles, and the two collisions "were likely separated by a fraction of a second of time and less than ten feet in space at a net speed of over thirty miles per hour"; the court was inclined to find a single occurrence, but refused to grant summary judgment on the issue because of a claim, unsupported by the evidence, that the driver may have retained control over his vehicle following the first collision and possibly could have avoided the second collision). In situations involving two acts of negligence that cause two distinct automobile collisions, the rule may be formulated as follows. If the second act of negligence is a foreseeable result of the first act of negligence and the first act of negligence is the sole proximate cause of all of the damages, then there is one occurrence for insurance purposes. *United Servs. Auto. Ass'n v. Baggett*, 209 Cal. App. 3d 1387, 1392-93, 258 Cal. Rptr. 52, 56 (1989). "On the other hand, if the original cause is interrupted or replaced by another cause, then there is more than one 'accident' or 'occurrence'." *Id*. at 1393, 258 Cal. Rptr. at 56.

Based on the facts of this case, whether there was one occurrence or two depends upon whether (a) the first collision was the sole proximate cause of all the injuries, the second collision and the second driver's negligence being merely a foreseeable result of the first collision and the first driver's negligence, and if so, (b) whether the second collision and the second driver's negligence were sufficient to interrupt or replace the original cause. Virginia case law is sparse on this issue and is not quite on point with the facts of this case. However, cases from other jurisdictions shed light on this issue. *See* the cases listed in Sullivan, 64 A.L.R.4th 668 at § 15 and § 23. A particularly instructive case that is directly on point is *Baggett*, 209 Cal. App. 3d 1387, 258 Cal. Rptr. 52 (*infra*).

In *Baggett*, a California case, one car rear-ended another. *Baggett*, 209 Cal. App. at 1390, 258 Cal. Rptr. at 54. The two cars stopped in the center lane, and within a minute, a third car struck the rear car. *Id*. The court found that the first collision, caused by one act of negligence, was the proximate cause of all the injuries, and the second collision, also resulting from an act of negligence, was a foreseeable result of the first act of negligence and the first collision. *See id*. at 1392-96, 258 Cal. Rptr. at 55-58. Thus, the court characterized these events as two negligent acts, each of which caused an "accident," *Id*. at 1394, 258 Cal. Rptr. at 57. The *Baggett* court apparently was using the word "accident" here to mean "collision" and was not using the word as a synonym of "occurrence" for insurance purposes, but held that the injuries involved resulted from a single occurrence for insurance purposes. *Id*. at 1396, 258 Cal. Rptr. at 58.

Similarly, in *Farmers Ins. Exch. v. Star*, one car abruptly stopped in moving traffic. 952 P.2d 809, 810 (1997). A second car braked and managed to stop without hitting the first car, but moments later, a third car ran into the back of the second car. An argument was made that the drivers of the first and third cars were both negligent. *Id*. The court reasoned as follows:

> Even if we assume, *arguendo*, that the car stopping in front of Star and the collision with her car by the following car constituted two separate incidents, that conclusion provides no support for the position that two separate accidents or occurrences also ensued. Rather, one accident, caused by two drivers, occurred here.

*Id*. at 814.

To the contrary, other courts have found that two collisions were two separate occurrences. Two such cases are *Liberty Mut. Ins. Co. v. Rawls* and *Illinois Nat'l Ins. Co. v. Szczepkowicz*.

In *Rawls*, a driver was fleeing from police at high speed and collided with a car on a public highway, knocking that car off the road. 404 F.2d 880, 880 (5th Cir. 1968). The driver who was fleeing the police apparently maintained control of his own vehicle and continued his flight. About two to five seconds later, at a distance of from thirty to 300 feet from the first collision, the fleeing driver then veered across the center line and collided with another vehicle. Under these facts, the court held that the two collisions amounted to two separate occurrences for insurance purposes. The court arrived at this conclusion because the two collisions were separated by both time and distance, and more importantly, because the driver retained control over his vehicle following the first collision. *Id*.

Finally, in *Szczepkowicz*, the driver of a tractor trailer pulled out of a driveway in an attempt to make a left turn into the southbound lanes of a public highway, but had to stop, thereby blocking the two northbound lanes with the rear of his vehicle. 185 Ill. App. 3d 1091, 542 N.E.2d 90, 91, 134 Ill. Dec. 90 (1989). A car in the right northbound lane then struck the tractor-trailer. Szczepkowicz, the driver of the tractor-trailer, then pulled his vehicle forward a little, thereby opening up the right northbound lane but leaving the left northbound lane still blocked. Szczepkowicz retained control of the tractor-trailer and could have unblocked both northbound lanes by backing the tractor-trailer off the roadway, proceeding into the southbound lanes, or pulling onto the grassy median between the two directions of traffic, but he failed to do so. About five minutes later, a second car traveling in the left northbound lane then struck the tractor-trailer. *Id*.

The court noted that a critical inquiry was whether the two collisions resulted from the same negligent act. *Id.* at 93. The court also considered several factors to determine whether the two collisions constituted one occurrence or two, including: (1) the time between the two collisions; (2) whether there was a "single force" that caused both of them; (3) whether there was "an unbroken or uninterrupted continuum that, once set in motion, caused multiple injuries"; (4) how much control Szczepkowicz had over his tractor trailer following the first collision; and (5) whether the conditions resulting in each collision were "substantially the same." *Id.*

The court concluded that the two collisions did not result from the same negligent act; rather, Szczepkowicz's actions following the first collision altered the conditions significantly and were a new, separate cause of the second collision. Because "the second collision did not result from continuous or repeated exposure either to the same or to substantially the same conditions," the court concluded that the two collisions were two occurrences for insurance purposes. *Id.*

Unlike the courts in *Rawls* and *Szczepkowicz*, the Court finds that the two collisions in this case resulted in one occurrence for purposes of insurance coverage. Applying the above principles of law to these facts reveals that only one occurrence was involved. Although the exact amount of time between the two collisions is not known, the parties' stipulation suggests that it was not much. In addition, the two collisions occurred in the same location; there was no separation in terms of physical distance. The negligence of McKenna was a single force that created a specific road hazard, two disabled vehicles sitting in the roadway. This hazard existed in an unbroken, uninterrupted continuum until the second collision occurred. Thus, the Court finds that these facts present a single occurrence.

## 2. *Intervening Cause*

The Court now turns to the issue of whether John Doe's collision with the Earlys was an intervening cause.

"An intervening cause in order to relieve a person charged with negligence in connection with an injury must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of injury." *Dickenson v. Tabb*, 208 Va. 184, 191, 156 S.E.2d 795, 801 (1967) (citing *Maroulis v. Elliott*, 207 Va. 503, 510-11, 151 S.E.2d 339, 345 (1966), and *Lester v. Rose*, 147 W. Va. 575, 594, 130 S.E.2d 80, 93 (1966)).

In *Dickenson v. Tabb*, a negligent driver caused a collision, and a second collision occurred some time later. *Id*. at 186-87, 156 S.E.2d at 797-98. Although the exact amount of time between the two collisions was not established, the following events occurred after the first collision but before the second: (1) both cars involved in the first collision came to a rest; (2) another driver named Smith stopped his own car near the accident; (3) Smith and his wife got out of their vehicle and viewed the scene; (4) Smith dispatched a person named Rice to a nearby town to notify the police and summon ambulances; (5) Smith told his wife to help the injured; (6) Smith ran about sixty feet down the road; (7) he then stood in the road to warn oncoming traffic; and (8) he observed an approaching car and tried to wave it down to get it to stop. *Id*. at 187, 156 S.E.2d at 798. That approaching car then drove past him and crashed into one of the cars that were blocking the roadway. The driver of this approaching car was also found negligent. *See id*. at 192, 156 S.E.2d at 801.

The Supreme Court of Virginia ruled that the two negligent acts were separate from and independent of each other, but that the later negligent act was not an intervening cause. Instead, the two separate and independent acts of negligence that caused two distinct collisions were together the direct cause of an indivisible injury. *See id*. The Supreme Court explained, "In order for the negligence of two parties to concur with each other as a proximate cause, it is not necessary that they occur simultaneously." *Id*. at 193, 156 S.E.2d at 802.

> The [first act of negligence] caused both lanes of traffic to be blocked, and this situation continued to the time of the second collision. The second collision was a naturally foreseeable consequence of the highway being blocked. [The first act of] negligence created that situation and started a chain of events from which further injury could and did occur as a proximate result.

*Id*. at 191, 156 S.E.2d at 801 (citing *Evans v. Farmer*, 148 W. Va. 142, 133 S.E.2d 710 (1963), and *Hartley v. Crede*, 140 W. Va. 133, 148, 82 S.E.2d 672, 681 (1954), *overruled in part on other grounds by State v. Kopa*, 173 W. Va. 43, 311 S.E.2d 412 (1983)).

Therefore, the Supreme Court concluded that the two drivers in question "were each guilty of negligence, and that their successive negligent acts were, in combination, the direct and proximate cause of [the plaintiff's] injuries." *Id*. at 197, 156 S.E.2d at 804. There were several injured persons in

the *Dickenson* case. This footnote cites a quotation regarding a Mr. Tabb's injuries, which could not be apportioned between the two collisions. *See id.* at 188, 156 S.E.2d at 799. The injuries of another plaintiff, Mrs. Smith, occurred during the second collision only. *Id.* at 188, 156 S.E.2d at 798. This case primarily addressed Mr. Tabb's indivisible injury, but it appears that both of the negligent tortfeasors involved were liable for all of the injuries resulting from the two collisions in that case.

Similar to the Courts' reasoning in *Dickenson,* the Court finds that John Doe's actions do not constitute an intervening cause. There is no evidence to demonstrate that John Doe had sufficient control over his vehicle following the first collision to avoid the second collision. Based on the short time between the two collisions, it can be inferred that McKenna and the Earlys did not have control over their vehicles following the first collision. The conditions, therefore, resulting in each collision were substantially the same. As stated above, John Doe's collision with the Earlys was a "naturally foreseeable consequence of the highway being blocked. [The first act of] negligence created that situation and started a chain of events from which further injury could and did occur as a proximate result." *Id.* at 191, 156 S.E.2d at 801 (citing *Evans v. Farmer,* 148 W. Va. 142, 133 S.E.2d 710 (1963), and *Hartley v. Crede,* 140 W. Va. 133, 148, 82 S.E.2d 672, 681 (1954), *overruled in part on other grounds by State v. Kopa,* 173 W. Va. 43, 311 S.E.2d 412 (1983)). Thus, the Court finds that the second collision by John Doe is not an intervening cause to create two distinct accidents for the purposes of insurance coverage.

## Conclusion

The Court finds that the two collisions in this case were a single occurrence for the purposes of insurance coverage. The Court, therefore, orders that judgment be entered in favor of State Farm and that this action be dismissed with prejudice.