STATE FARM FIRE AND CASUALTY COMPANY, Appellant,

v.

John Phillip McPHEE and Harold LeRoy Schroedl, Trustee in the Matter of the Wrongful Death of Linda McPhee, Respondents.

No. C0–82–1038.

Supreme Court of Minnesota.

July 15, 1983.

---

Lommen, Nelson, Sullivan & Cole, Phillip A. Cole and Kay Nord Hunt, Minneapolis, for appellant.

Korba & Blonigan and William A. Blonigan, Gerald C. Magee, Minneapolis, for Schroedl.

Ronald L. Johnson, Hopkins, for McPhee.

AMDAHL, Chief Justice.

This action is an appeal by State Farm Fire & Casualty Company (State Farm) from a decision in a declaratory judgment action commenced to interpret the terms of a homeowner's policy originally issued to defendant John McPhee (John) and his deceased wife Linda McPhee (Linda). State Farm sought a declaration of no coverage under the policy in a wrongful death claim brought by Linda's children, Mark McPhee (Mark) and Katie Schleif (Katie). Mark and Katie brought the action against John after their mother died as a result of a shooting accident which occurred on July 22, 1980 at John and Linda's home. John tendered the defense of the children's claim to State Farm pursuant to his homeowner's policy, and State Farm, in turn, sought a declaratory judgment of no coverage.

John and Linda purchased the homeowner's policy at issue in January of 1977 in conjunction with their purchase of a home in Lino Lakes, Minnesota. The policy issued by State Farm listed both John and Linda as named insureds, and automatically renewed annually upon payment of the premiums by John and Linda. This policy was in full force on July 22, 1980, the date that John fatally wounded Linda.

John and Linda began residing together in Lino Lakes in February 1977. On April 23, 1977, they were married and they continued to reside together in Lino Lakes. Also residing with them were Katie, Linda's daughter from a prior relationship, and Mark, John's and Linda's son.

On September 29, 1979, John and Linda separated. Apparently the couple had always had a stormy relationship, marked by heated arguments and occasional threats of violence by John against Linda. Upon their separation, Linda moved, along with the two children, to an apartment on Fillmore Street N.E. in Minneapolis. Linda remained at the address on Fillmore, and did not return to the house in Lino Lakes until the fateful evening of July 22, 1980.

The relationship between John and Linda became increasingly acrimonious after the commencement of their marriage dissolution proceeding in February of 1980. This antagonism apparently continued until the fatal day, July 22, 1980. On that day, John decided that he was going to do something in response to his exasperation over the continued indefinite status of the marriage dissolution proceeding. Shortly before 9 p.m., he called Harold Schroedl, Linda's father, and told him to relay to Linda that she should come and pick up her personal property still remaining at the residence in Lino Lakes. Although Mr. Schroedl objected because of the late hour, John insisted. As a result of John's call, Harold Schroedl, his

wife Patricia, Linda, Mark, and Katie made arrangements to go to John's residence.

After the phone call to Linda's father, John decided that he wanted to impress Linda that he was serious about pursuing a quick resolution of the dissolution proceeding by scaring her. He decided he would fire one round with his shotgun and blow a hole through a window or wall. John removed his unloaded 12-gauge pump action shotgun from his bedroom closet and armed it with just one cartridge. John pumped the shell from the magazine into the chamber of the barrel, so that the cartridge was in a position to be fired when triggered. With Linda on her way, John concealed the loaded weapon under a blanket on his bed.

At some point after Linda and her family had arrived, John called Linda into his downstairs bedroom and asked her to check to see if it contained any of her property. When Linda walked out of the room carrying a 2- by 2-foot box of cosmetics, John took the shotgun from under his blanket and followed her, carrying the gun at his waist with the barrel end raised. John followed Linda to the stairs. When he reached the landing at the bottom of the stairs, the gun was pointed momentarily at Linda's upper torso and John had his finger on the trigger. Linda looked back at John, shouted, "No, John, no," and began to ascend the stairs. John took a couple of steps up the stairs.

At this point, Katie, who had been standing behind John, ran up, grasped the barrel of the shotgun with both hands and, standing on her tiptoes, threw her weight (90–100 pounds) down on the gun. John and Linda stared at each other in shock. Seeing her daughter grab the gun, Linda turned on the stairs, dropped the box of cosmetics, which spilled down the stairs, and slipped down the stairs herself. Linda slipped down several steps and, as she fell, grabbed the end of the shotgun with her hand. John resisted and tried to hold the gun on Linda, and, in their struggle for its control, the trio swung the gun back and forth, up and down. When Katie and Linda had the gun down by Linda's hip, John pulled the

trigger and Linda was hit in the leg. Linda died a few weeks later from complications arising as a result of a blood clot. John eventually pled guilty to unintentionally causing the death of another while in the commission of a felony under Minn.Stat. § 609.195(2) (1980).

The declaratory judgment action was tried in Anoka County District Court before Judge Thomas Spence and a jury. State Farm based its denial of coverage on two grounds. First, State Farm relied upon the policy's household exclusion clause which excludes liability coverage for any bodily injury to an insured. Linda was a named insured under the policy. As a matter of law, the court held that, because of the marital discord between the parties and Linda's consequent change in residence, Linda was not an insured within the terms of the policy at the time of her death and therefore that the household exclusion clause did not operate to deny coverage.

The second ground upon which State Farm sought a denial of coverage was the policy's "intentional acts" exclusion, which provides for no coverage in cases in which the injury or damage is expected or intended by the insured. John had fired the round which fatally injured Linda, and the issue whether he thereby intended to inflict bodily harm upon Linda was submitted to the jury in the form of a special verdict. The jury concluded that John did not intend to inflict bodily harm upon Linda. The trial court therefore declared that State Farm has a contractual obligation to defend and indemnify John McPhee in the pending wrongful death action, and State Farm appeals from the judgment entered pursuant to the trial court's order.

■ Appellant's primary argument is that the liability sought to be imposed arises from bodily injury incurred by a named insured, and that the household exclusion clause clearly operates to deny such coverage. Linda was, along with John, designated a named insured under the home-

owner's policy issued by State Farm.[1] The trial court held, however, that Linda ceased to be a named insured when she and John became estranged and she moved to different quarters. Appellant argues that the trial court's holding that marital estrangement nullifies one's named insured status under a homeowner's liability policy is both contrary to the terms of the policy and unwise because it will, if upheld, have a substantial detrimental impact on the financial status and security of separated couples in Minnesota. We agree with appellant and hold that John's liability for the wrongful death of his wife is excluded from coverage through the operation of the policy's household exclusion clause, which expressly excludes coverage for bodily injury to a named insured.[2]

▋ Because it reasoned that Linda's move from the marital residence to another home during her separation from John was sufficient to nullify her status as a named insured, it seems clear that the trial court determined that Linda derived her status as an insured from her residence in the household. However, in distinguishing between a "named insured" and an "insured," the definitions in the policy demonstrate that Linda did not derive her status as an insured from residence in the household but, rather, from her designation in the policy as a named insured. The term "insured" is defined under the policy as including not only the persons named on the face of the policy but also certain members of the named insured's household:

DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household, and "we," "us" and "our" refer to the Company indicated in the Declarations. In addition, certain words and phrases are defined as follows:

\* \* \* \* \* \*

3. "insured" means you and the following residents of your household:
a. your relatives;
b. any other person under the age of 21 who is in the care of any person named above.

This definition establishes a limit to the scope of those covered by imposing a residency requirement upon an insured who is not a named insured. However, this definition imposes no residence requirement upon a named insured. Moreover, Linda clearly had an insurable interest in the insured property. Under these circumstances, we conclude that the trial court's decision that Linda was not an insured is inconsistent with the plain language of the policy.[3] When the language of a policy is not ambiguous, we will give effect to its plain meaning. *See, e.g., Firemen's Insurance Co. of Newark v. Viktora,* 318 N.W.2d 704, 706 (Minn.1982). Accordingly, we reverse.

Reversed.

---

1. The declaration page of the homeowner's policy specifically named John P. McPhee and Linda M. Schleif as named insureds. Linda and John had applied for this coverage prior to their marriage. At the time of their application for insurance and at the time of the shooting, John and Linda were joint owners of the homestead insured under the policy. Linda signed the application as did John. No subsequent request to remove Linda as an insured under the policy was ever received by State Farm, nor was there evidence that such a request was ever made.

2. As an additional ground of appeal, it is argued that John's liability is excluded from coverage through the operation of the policy's "intentional act exclusion," which excludes coverage for bodily injury resulting from an insured's intentional act. Because we hold that John's liability is excluded from coverage under the terms of the policy's household exclusion clause, we need not address this additional claim.

3. The trial court cited *Tomlyanovich v. Tomlyanovich,* 239 Minn. 250, 58 N.W.2d 855 (1953), and *Bartholet v. Berkness,* 291 Minn. 123, 189 N.W.2d 410 (1971), in support of its decision that, because Linda was no longer a member of the household, Linda was not an "insured" under the policy. In the cited cases, this court explained the test applicable in determinations regarding the extent of a "household." These cases are inapplicable in the case at bar, however, because Linda's status as an insured derived from her being a named insured, and was not contingent upon any determination regarding her membership in the household.