**NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, Appellant,**

v.

**Dale ANDERSON, individually and as parent and natural guardian of Patrick Anderson, a minor child, Betty Anderson, individually and as parent and natural guardian of Patrick Anderson, a minor child, and Patrick Anderson, individually, Paul Anderson, Respondents,**

**Ronald Steen, individually and d.b.a. Transmatic Big R Grain Dryer Capitol, Defendant,**

**Lowry Manufacturing Company, Farm Fans, Inc., Respondents.**

**No. C1–85–26.**

Court of Appeals of Minnesota.

Aug. 6, 1985.

William M. Bradt, St. Paul, for National Farmers Union Property and Cas. Co.

Michael M. Erhardt, Benson, for Dale Anderson.

Dewey M. Nelson, Morris, for Betty Anderson.

Jeffrey D. Kuhn, Glenwood, for Paul Anderson.

John E. Vukelich, St. Paul, for Lowry Mfg. Co.

Kevin A. Spellacy, St. Cloud, for Farm Fans, Inc.

Heard, considered and decided by LESLIE, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant National Farmers Union Property and Casualty Company (National) appeals from summary judgment awarded to respondents Dale, Paul, and Patrick Anderson, which judgment determined that National was obligated to provide coverage and indemnification to named insured Paul in connection with injuries suffered by Patrick, who is Paul's brother and named insured Dale's son. We affirm.

## FACTS

Patrick Anderson lost his hand and part of his arm while helping his father, Dale, and his brother, Paul, clean a grain dryer and bin on Dale's farm on August 13, 1981. Patrick was ten years old. Through his parents, he commenced an action against, among others, Paul, alleging that the injuries resulted from the negligence of Paul. Another defendant brought an action against Dale, who is a third party defendant.

Paul and Dale were named insureds under a policy issued by National on February 14, 1981, and in force at the time of the accident. Paul and Dale tendered defense of the underlying lawsuit and the third party claims to National. National commenced this declaratory judgment action to determine its obligations to either Dale or Paul under the policy.

Paul was 27 years old on the date of the accident. He resided approximately one-half mile from the home of his parents and Patrick, on property that is being purchased by his parents on a contract for deed from a third party. The property is separated from Dale's 460 acres by a public road. Paul had not resided with his parents since the fall of 1975. Paul also owned approximately 160 acres of property approximately five miles from the home of Dale and lived on that property during 1976, 1977, and part of 1978. In addition, Paul rented from a neighbor 140 acres of farmland immediately adjacent to Dale's land.

Paul and Dale had a working relationship under which Paul provided labor to his father in connection with his father's farming operation in exchange for a share of the milk check and the use of his father's machinery in connection with Paul's farming operation.

National claims that the language of its insurance policy clearly excluded coverage for both Dale and Paul for any injuries claimed by Patrick, and further alleges that the trial court erred in looking beyond the terms of the contract to determine the insuring intent of the parties. Patrick claims that the trial court properly found that the language of the insurance policy was ambiguous, rendering it necessary for the court to go beyond the contract to determine the insuring intent of the parties and then to decide the issue summarily.

The trial court determined that National: intended to undertake two separate and distinct obligations, and that the parties intended the contract to be severable. Therefore, Patrick is not an insured under the insurance policy of Paul Anderson. He must be permitted to recover pursuant to this policy.

National appealed.

## ISSUES

1. Is the insurance policy issued by National to Paul and Dale Anderson ambiguous?

2. If the policy is ambiguous, did the trial court err in granting summary judgment on the issue of the insuring intent of the parties?

## ANALYSIS

### I.

Any terms or provisions of an insurance policy that are susceptible of more than one meaning are ambiguous. *Columbia Heights Motors, Inc. v. Allstate Insurance Co.*, 275 N.W.2d 32, 34 (Minn.1979). Determining whether the language is ambiguous is a question of law to be decided initially by the trial court. *Id.* It then becomes the duty of the reviewing court to determine whether the trial court was correct in finding the provisions ambiguous. *See id.*

The Minnesota Supreme Court has recognized that where there is reasonable doubt as to the meaning of the language of an insurance policy, courts must resolve the doubt in favor of the insured. *Id.* at 36. This court applied this rule in *Western World Co. v. Hall*, 353 N.W.2d 221 (Minn. Ct.App.1984), finding that a self-inflicted injury clause was ambiguous, and construing the clause against the insurer.

Where the language is unambiguous, however, courts must give the language its ordinary meaning and not redraft the contract. *Simon v. Milwaukee Automobile Mutual Insurance Co.*, 262 Minn. 378, 385, 115 N.W.2d 40, 45 (1962).

The policy in question is a farm blanket liability insurance policy. It provides liability insurance coverage to Dale and Paul by name. Under the terms of the contract, National agrees to pay as follows:

Coverage A—Farm and Personal Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage.

The term "insured" is defined as follows:

The unqualified word "insured" includes (a) the named insured, (b) if the named insured is an individual, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of the insured if such spouse, relative or other person is a resident of the household of the named insured, (c) if the named insured is a corporation, any executive officer or director thereof, while acting within the scope of his duties as such, (d) if the named insured is a partnership, any partner while acting within the scope of his duties as such, (e) any person while operating farm machinery or in charge of farm animals in any of the insured's operations covered by this policy and with the permission of an insured as defined in parts (a), (b), (c) and (d).

The exclusionary language provides that the policy does not apply:

(j) under Coverages A and B–1 to bodily injury to (1) any insured within the meaning of parts (a), (b), (c) and (d) of the definition of insured, (2) employees of an insured * * *.

Thus, the policy provides liability insurance coverage by name to Dale and Paul, and it provides coverage by status also. National argues that Patrick is insured under subdivision (b) because he is a relative of Dale, under the age of 21, and a resident of the household. Consequently, argues National, the exclusionary clause is triggered and coverage is excluded for Dale and Paul for the injury to Patrick. National emphasizes that there is one contract subjecting Paul and Dale and any other insured to the same rights and limitations. To further support its argument that there is no ambiguity, National points to the "low" $93.80 premium which allegedly reflects the reduction of risk to the insurer by excluding a category of persons to whom the insured has a significant exposure.

In response, the Andersons argue that, although Patrick is an insured under the household resident provision with regard to Dale, he is not an insured in relation to Paul because he is neither a resident of Paul's household nor his employee. The Andersons also argue that, although Patrick may be an insured under subdivision (e) which refers to "any person while operating farm machinery * * * with the permission of an insured," exclusion (j) does not apply to subdivision (e).

We find the Andersons' arguments to be persuasive, as did the trial court. National chose to issue a single policy under which both Paul and Dale were named insureds. Under the particular circumstances here present, that issuance created the possibility that Patrick, the son of one named insured and the brother of another named insured, might be excluded from his father's coverage, but eligible under his brother's. The trial court did not err in determining that the policy was ambiguous, and in proceeding to construe the policy provisions.

## II.

■ There is no Minnesota case law directly addressing the issue of the severability of an insurance policy issued to two named insureds. With regard to noninsurance contracts, however, the Minnesota Supreme Court has ruled that the intent of the parties must be ascertained in determining whether provisions are severable. *See Shultz v. Stiernagle*, 270 N.W.2d 269 (Minn.1978); *E. Edelman & Co. v. Queen Stove Works, Inc.*, 205 Minn. 7, 284 N.W. 838 (1939).

■ Although not addressing the issue of severability, this court has stated that the role of the trial judge in establishing the intention of the parties to a contract through the use of extrinsic evidence should be as follows:

If the language of a contract is ambiguous, resort may be had to extrinsic evidence in aid of construction. If the extrinsic evidence is conclusive and undisputed, the determination of the meaning of a contract is a function of the trial judge, but if the extrinsic evidence is inconclusive or disputed, the uncertainty and conflict must be resolved at trial.

*Deutz & Crow Company, Inc. v. Anderson*, 354 N.W.2d 482, 486 (Minn.Ct.App. 1984).

■ In determining the severability of an insurance contract, we recognize that courts are to construe insurance policies liberally in favor of the insured. *Olson v. Blue Cross and Blue Shield*, 269 N.W.2d 697, 700 (Minn.1978). In addition, ambiguities, particularly in exclusions, are to be interpreted against the insurer. *Caspersen v. Webber*, 298 Minn. 93, 98, 213 N.W.2d 327, 330 (1973).

Outside of Minnesota, there is authority indicating that, in establishing whether an insurance policy is severable, the court should determine the parties' intent from the language used in light of all the surrounding circumstances at the time they contracted. *See* 43 Am.Jur.2d *Insurance* §§ 312–19 (1982); 44 C.J.S. *Insurance* § 336 (1945). Also, three New York cases are of interest.

In *Jacobs v. United States Fidelity & Guaranty Co.*, 2 Misc.2d 428, 152 N.Y.S.2d 128 (N.Y.Sup.Ct.1956), two brothers were named insureds. The spouse of one insured sued the other insured. The trial court granted the insured's motion for summary judgment and denied the insurer's claim of a statutory exclusion, holding that the definition of "insured" in the policy would be meaningless unless the insurer intended to undertake separate and distinct obligations. The Andersons argue that in this case, too, the definition of "insured" would be meaningless unless National intended to maintain separate obligations to Paul and Dale as named insureds.

In *Morgan v. Greater New York Taxpayers Mutual Insurance Association*, 305 N.Y. 243, 112 N.E.2d 273 (1953), the policy covered two named partners. The policy contained an exclusion for damages intentionally caused by an insured. One of the partners allegedly assaulted a third

party, who commenced an action against both partners on the theory that the assault arose out of the business of the partnership. The insurer attempted to invoke the exclusion with respect to both partners and the trial court agreed. However, the appellate court rejected the argument as against the passive partner, thereby recognizing that the exclusion applied separately to each insured.

Ultimately, the trial court relied upon *Barson v. General Accident Fire & Life Assurance Corp.*, 42 Misc.2d 381, 247 N.Y. S.2d 905 (N.Y.Sup.Ct.1964). In *Barson,* an automobile liability policy insured the corporate owner and any other person driving the car with the corporate owner's permission. Barson was driving the insured vehicle with permission of the corporate owner when his wife, a passenger, was injured. A New York statutory exclusion provided that "[n]o policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse * * * unless express provision relating specifically thereto is included in the policy." *Id.* at 383, 247 N.Y.S.2d at 907. In wife's action against the corporate owner, the court held as a matter of law that Barson's wife could maintain that action despite the statutory exclusion. Thus, the court found that the corporate owner and Barson were separately insured.

■ In response to the trial court's reliance, National argues that *Barson* was based on strict statutory construction, and because the spouse there was not suing her husband but rather the corporate owner, the statutory exclusion was found inapplicable. Further, National argues that New York courts construe insurance contracts more liberally than do Minnesota courts. However, we find the rationale of *Barson* to be persuasive and the trial court's reliance on it to be sound. The trial court reasoned that exclusionary clauses covering "relatives of the named insured under the age of 21 in the care of the named insured and residents of the household is obviously to avoid collusion. That reasoning should not be extended to named in-

sureds who are not in the same household." We agree. National chose to insure both Dale and Paul Anderson in a single policy. National cannot escape the ambiguity that was created, nor the reasonable determination that it intended to undertake two separate and distinct obligations in a severable contract.

Finally, National argues that the trial court erred in granting summary judgment, and requests an opportunity to present evidence of insuring intent and to explain applicable underwriting policies, such as premium considerations and the availability of other insurance that would afford protection to all named insureds for the risk encountered here.

■ The parties stipulated to the facts of the case. National introduced no additional information before the trial court as to the intent of the parties regarding the divisibility of the contract. It did, however, include in its appeal brief a document indicating the premium which Paul paid when added to his father's policy and the premium Paul would have paid on a policy issued solely to him. Consideration of this document on appeal would be improper. The nonmoving party in the trial court must show at the time of a motion for summary judgment that specific facts exist that create a genuine issue for trial. *Borom v. City of St. Paul,* 289 Minn. 371, 375, 184 N.W.2d 595, 597 (1971). National failed to show that facts existed to create such a genuine issue. The trial court did not err in awarding summary judgment in favor of the Andersons.

### DECISION

The policy issued to Paul and Dale Anderson was ambiguous. The trial court properly construed the policy to determine an intent by the insurer to undertake two separate and distinct obligations to two named insureds.

Affirmed.