AMERICAN NATIONAL FIRE
INSURANCE COMPANY,
Respondent,

v.

The ESTATE OF Robert Leo
FOURNELLE, Respondent,

Joanne Marie Grimsrud, individually, and
Joanne Marie Grimsrud, Trustee for
the heirs and next-of-kin of Thomas
Fournelle and Joseph Fournelle, Petitioner, Appellant.

No. C8–90–491.

Supreme Court of Minnesota.

June 28, 1991.

Colia F. Ceisel, St. Paul, for Grimsrud.

Richard Chadwick, Robert Kuderer, Chadwick and Johnson, Financial Plaza, Minneapolis, for Amer. Nat. Fire Ins. Co.

James Erickson, Peterson, Bell & Converse, Roseville, for Estate of Robert Fournelle.

YETKA, Justice.

Insurer-respondent, American National Fire Insurance Company, brought this declaratory judgment action to determine its obligation under a homeowners' policy that provided personal liability coverage for Robert Fournelle and his wife, Joanne Grimsrud, as named insureds. Grimsrud filed for divorce and got a court order

granting her temporary possession of and excluding Fournelle from the insured premises. Fournelle shot and killed their children while visiting them at his wife's house. The question arose as to whether the policy allowed the trustees of the deceased children to collect damages for their deaths under the homeowners' policy written to Fournelle and Grimsrud. The trial court entered summary judgment for the insurer and was affirmed by the court of appeals. 459 N.W.2d 157. We granted review. We reverse and remand to the district court for trial.

The facts are largely undisputed. Robert Fournelle married Joanne Fournelle, now Joanne Grimsrud, in 1967. The couple lived at 1272 James Avenue, St. Paul. On January 16, 1985, Robert Fournelle left the marital residence under court order. Grimsrud remained in the house with the couple's two teenage sons. She filed for divorce on January 25, 1985, and received temporary custody of the children and temporary possession of the house. Thereafter, Fournelle occupied a separate residence from Grimsrud and the children.

On March 3, 1985, Fournelle arrived at the marital residence to visit his sons. He shot and killed the boys, vandalized the house, and then committed suicide. The records of the Ramsey County Medical Examiner state that each boy died of multiple gunshot wounds to the head.

Grimsrud brought a wrongful death action against Fournelle's estate. The estate tendered defense of the lawsuit to American National pursuant to the Fournelles' homeowners' policy. Grimsrud and the estate reached a *Miller v. Shugart*[1] settlement, awarding $250,000 to Grimsrud to be paid from insurance proceeds.

Under the homeowners' policy issued by American National, both Fournelle and Grimsrud were named insureds.[2] The deceased children were not named insureds. The policy provides personal liability coverage for Fournelle, which coverage does not depend on whether the liability arose from or was related to the homestead.

The insurance policy includes several definitions and clauses that are of particular importance. First, the policy contains what is commonly known as a "household exclusion." This exclusion provides:

2. Coverage E—Personal Liability, does not apply to:

\* \* \* \* \* \*

f. bodily injury to you and any insured within the meaning of part a. or b. of Definition 3. "insured".

The term "You" is defined as follows: Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. \* \* \*

The following definition of "insured" appears in Definition 3, parts a. and b. of the policy:

3. "insured" means you and the following residents of your household:

    a. your relatives;

    b. any other person under the age of 21 who is in the care of any person named above.

Finally, the policy also contains a severability clause, which states:

2. Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

Given these policy provisions, the issue presented by this appeal concerns whether the "household exclusion" of a homeowner's insurance policy containing a severability clause excludes coverage for a named insured's killing of his two children.

■ American National maintains that the severability clause is immaterial to determination of this lawsuit where the exclusion, by its terms, applies to "any insured." At the time of their deaths, the children resided with Grimsrud, a named insured under the policy. Hence, the children qualify as "insureds" under the omnibus or

---

1. *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982) (plaintiff claimant and insured defendant may stipulate to amount of money judgment before insurer's declaratory judgment suit is decided).

2. Joanne Grimsrud was formerly known as Joanne Marie Fournelle.

general insureds provisions of Definition 3. American National reasons that there can be no recovery since the children otherwise qualify as "insureds" under the policy. The trustee, on the other hand, asserts that the severability clause demands that the exclusion be read in reference to Fournelle because he alone seeks protection under the policy. Since the children were residents of the mother's household and not Fournelle's, the trustee claims that the policy provides coverage.

We believe that the trustee makes the better argument. To claim that the household exclusion applies because the children were residents of a named insured's household misconstrues not only the policy language, but also the doctrine of severability. Moreover, the language in the policy is, at best, ambiguous. Therefore, we will strictly construe it against its drafter, resolving all doubts concerning the language used in favor of the insured. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn.1985); *Nordby v. Atlantic Mut. Ins. Co.*, 329 N.W.2d 820, 822 (Minn.1983).

■ Severability is a widely recognized doctrine that acknowledges the separate and distinct obligations the insurer undertakes to the various insureds, named and unnamed. *See, e.g., Utica Mut. Ins. Co. v. Emmco Ins. Co.*, 309 Minn. 21, 243 N.W.2d 134 (1976); *Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n*, 305 N.Y. 243, 248–49, 112 N.E.2d 273, 275 (1953); *Allstate Ins. Co. v. Mangum*, 299 S.C. 226, 229, 383 S.E.2d 464, 466 (S.C.Ct. App.1989). The intent of a severability clause is to provide each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy. *United States Fidelity & Guar. Co. v. Globe Indem. Co.*, 60 Ill.2d 295, 299, 327 N.E.2d 321, 323 (1975). Thus, severability demands that policy exclusions be construed only with reference to the particular insured seeking coverage. *See Utica Mut. Ins. Co.*, 309 Minn. at 32, 243 N.W.2d at 140; *see also* 13 Appleman, *Insurance Law & Practice* § 7486 at 633 (rev.ed. 1976). Past decisions

have applied the doctrine to employee exclusionary clauses where the injured person was an employee of a named insured, but not an employee of the particular insured seeking protection under the policy. *See Utica Mut. Ins. Co.*, 309 Minn. at 32, 243 N.W.2d at 140. While severability in an employee exclusion context promotes a different policy goal, that alone is insufficient reason to ignore the insurer's explicit invocation of the severability doctrine in a homeowner's policy.

American National, as the drafter of the policy, inserted the severability clause for some purpose. The policy states: "This insurance applies separately to each insured." A reasonable interpretation of these words leads to the obvious and singularly correct conclusion that each insured must be treated as if each were insured separately, applying exclusions individually as to the insured for whom coverage is sought. Under that reasoning, application of the exclusion focuses on Fournelle, the named insured, and those relatives who are residents of his household. That the children resided with Grimsrud and otherwise qualify as insureds with reference to her is of no concern; Grimsrud is not the insured seeking protection under the policy. The doctrine of severability limits application of the exclusion to the insured claiming coverage and those deriving their insured status from that insured claiming coverage. There would be no point to a severability clause if it did not provide separately to each named insured. The analysis suggested by American National would render the clause a nullity.

American cites *State Farm Fire & Casualty Co. v. McPhee*, 336 N.W.2d 258 (Minn. 1983), as controlling authority here. In that case, involving an estranged couple, the husband shot and killed his wife. Both the husband and the wife in *McPhee* were named insureds on the homeowners' policy, but they lived separately. This court agreed that the household exclusion prevented recovery under the policy for the wife's death, basing its decision on the wife's death, this court based its decision of the wife's status as a named insured, not as a resident. We said:

[I]n distinguishing between a "named insured" and an "insured," *the definitions in the policy demonstrate that Linda did not derive her status as an insured from residence in the household but, rather, from her designation in the policy as a named insured.* The term "insured" is defined under the policy as including not only the persons named on the face of the policy but also certain members of the named insured household:

\*　\*　\*　\*　\*　\*

This definition establishes a limit to the scope of those covered by imposing a residency requirement upon an insured who is not a named insured. However, this definition imposes no residence requirement upon a named insured.

*Id.* at 261 (emphasis added). While not controlling, *McPhee* supports our decision here insofar as it illustrates the need for careful construction of defined terms when applying an exclusion.

Contrary to American National's assertion, the exclusion at issue does not apply to "any insured." Rather, it applies to "any insured *within the meaning of part a. or b. of Definition 3.*" The exclusion itself requires reference back to the definition of "insured," a definition limiting the scope of coverage to those relatives of the named insured seeking coverage who are residents of that named insured's household. To ignore the remainder of the sentence, as American National suggests, would expand the exclusion beyond its very words of limitation. If an insurer wants to exclude certain coverages, it should do so in clear and concise language.

In this case, American National concedes that, had a multitude of relatives moved into the household of either Grimsrud or Fournelle, they too would have been insured under the omnibus clause. Yet, American National argues, on the other hand, that the policy in this case did not intend to protect the husband and wife in their individual capacity when separated. These arguments are contradictory. It seems to us that it is far easier to contemplate separation of married couples today when 50 percent of all marriages end in divorce than to attempt to speculate how many relatives might move in with the parties. The very purpose of the severability clause appears to be to provide separate coverage to the two named insureds. As noted, this court, as well as the court of appeals, has held that whether the children or relatives are insured depends on whether they were residents of the home of the named insured against whom the claim is brought and who seeks protection of the liability limits of the policy. *See McPhee,* 336 N.W.2d at 261; *National Farmers Union Property & Casualty Co. v. Anderson,* 372 N.W.2d 71 (Minn.App.1985). If they were not named insureds or residents, the exclusion does not apply. We do not find these decisions either ambiguous or unreasonable.

Both lower courts are reversed, and the case is remanded to district court for trial on the remaining issues.

COYNE, Justice (dissenting).

I respectfully dissent. By rewriting the parties' contract without regard to either the language of the contract or the intent of the parties, the majority demonstrates once again the veracity of the adage that hard cases make bad law.

The following definitions contained in the homeowners' policy issued by Great American Insurance Companies to Robert and Joanne Fournelle are pertinent to this inquiry:

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

\*　\*　\*　\*　\*　\*

3. "insured" means you and the following residents of your household:

    a.　your relatives;

    b.　any other person under the age of 21 who is in the care of any person named above.

4. "insured location" means:

   a. the residence premises;

     \*     \*     \*     \*     \*     \*

Two persons, Robert Fournelle and Joanne Fournelle, are named as insureds in the Declarations of the Great American policy. According to the policy definitions, then, "you" and "your" refer to both Robert Fournelle and Joanne Fournelle, and because in this case "you" and "your" refer to two people who reside at different locations, the class of persons who fall within the policy definition of "insured" is doubled. First, " 'insured' means you"—i.e., the two named insureds Robert Fournelle and Joanne Fournelle. Had there been only *one* named insured, the unnamed spouse would have ceased to be an "insured" as soon as Robert and Joanne took up separate residences. Had Joanne been the sole named insured, Robert, whose status as an insured would have depended on the fact that he was the spouse of the named insured who resided in the named insured's residence, would have ceased to be an "insured" the moment he moved out of the family residence. On the other hand, had Robert been the sole named insured, then when Robert moved from the insured premises, Joanne would no longer be an insured even though she continued to reside there. As we observed in *State Farm Fire and Casualty Co. v. McPhee*, 336 N.W.2d 258, 261 (Minn.1983), the policy definition imposes no residence requirement on a named insured.

In addition to the named insureds, "insured means \* \* \* the following residents of your household: a. your relatives." When Robert and Joanne separated, Thomas and Joseph, the Fournelles' minor sons, continued to live with their mother in the family home, which was insured by the homeowner's policy. Consequently, the two boys were also "insureds" with respect to personal liability. In short, at the time Robert shot and killed his two sons and himself, Robert, Joanne and their two sons, Thomas and Joseph, were all insureds under the Great American policy.

When Joanne instituted an action for wrongful death against Robert's estate, Great American denied that the claim was within the coverage afforded by the policy. The insurer based its denial in part on the following exclusion:

2. Coverage E—Personal Liability, does not apply to:

     \*     \*     \*     \*     \*     \*

f. bodily injury to you and any insured within the meaning of part a. or b. of Definition 3. "insured".

Inasmuch as the two victims, Thomas and Joseph, were insureds, the clear and unambiguous policy language excludes from coverage claims arising out of their injury and death—and so the trial court and court of appeals concluded.

Joanne contends, however, that the severability clause vitiates the exclusion:

2. Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

Certainly, the severability clause has long been understood to clarify the meaning of the term "the insured" when that term appears in a policy exclusion, and especially in the employee exclusion.[1] Risjord and Austin, "Who is 'The Insured' " Revisited, 28 Ins.Couns.J. 100, 101 (1961). Thus it was that 15 years ago this court held that an "employee exclusionary clause" does not preclude coverage for bodily injury to an employee of a named or additional insured if the injured person was not an employee of the insured seeking protection under the policy. *Utica Mut. Ins. Co. v. Emmco Ins. Co.*, 309 Minn. 21, 35, 243 N.W.2d 134, 142 (1976).[2] It is, however, one thing to say that when it appears in an exclusion the term "**the** insured" means only the person claiming coverage. Risjord and Austin, *supra*, at 100. It is quite something else to say that "the person claiming coverage" should be substituted

---

**1.** Most automobile policies, for example, exclude from coverage liability for bodily injury to any employee of "the insured" arising out of and in the course of employment.

**2.** The court also ruled that the holding should apply irrespective of the presence of a severability-of-interests clause. *Id.* at 33, 243 N.W.2d at 141.

for the term "**any** insured" in the exclusion for "bodily injury to you and any insured." In apparent recognition that such an interpolation would render the exclusion meaningless, (the person claiming coverage has no liability for injury to himself or herself) Joanne does not attempt to make the substitution but instead urges that because Robert Fournelle's estate alone seeks the protection of the policy, the exclusion should be "read" as if Robert were the sole named insured. Of course, the "reading" required to support Joanne's proposed conclusion does not go to the exclusion, but rather to the definition of insured, which must then be "read" to *exclude* the Fournelle sons, Thomas and Joseph, from the status of insured.

This court has, however, twice rejected the contention the policy divides into two separate policies or that policy definitions change whenever some insured claims coverage under the policy. *North Star Mutual Insurance Co. v. Ziebarth*, 386 N.W.2d 238 (Minn.1986), was a declaratory action in which the daughter of the deceased named insured claimed that she was an insured pursuant to the "definitions" section of her father's homeowner's policy:

> If *you* die while insured under this policy, *your* protection passes to *your* legal representative or other person having proper, temporary custody of covered property.

*Id.* at 239 (emphasis in original). We rejected the argument, grounded on the severability clause, that "you" and "your" referred only to the sole named insured and held that "you", as defined in the policy,[3] referred not only to the deceased named insured but also to his surviving spouse, who continued to reside in the covered premises. Therefore, because "you" re-

ferred to both the named insured and his spouse, coverage would pass to the legal representative or other custodian of covered property pursuant to the "if *you* die" clause only on the death of both those persons. *See also State Farm Fire & Cas. Co. v. Guccione*, 171 Ill.App.3d 404, 406–07, 121 Ill.Dec. 537, 538–39, 525 N.E.2d 595, 596–97 (1988).

Had the court "read" the definitions section so that "you" and "your" referred only to the named insured under whose aegis the daughter was claiming coverage—the same kind of revision appellant would have us do here—the passage of coverage to the legal representative or other custodian of covered property would have been triggered by the death of the named insured. But the court simply looked to the plain language of the definition section in holding that the daughter was not entitled to the protection of the policy.

Earlier, in *McPhee*, 336 N.W.2d at 261, we held that an insured homeowner's liability for the wrongful death of his estranged wife was excluded from coverage by operation of the exclusion for any bodily injury to an insured. As in the present case, both John and Linda McPhee were named insureds in their homeowner's insurance policy. When the couple separated John remained in the insured premises; Linda and her two children moved into an apartment. About 10 months later John shot Linda.

John contended that Linda ceased to be an insured when she and John became estranged and moved to different quarters. Had Linda derived her status as an insured from residence in the household of her named insured spouse,[4] then that argument would have had merit. But Linda was a named insured, and the policy did not im-

---

**3.** The definition of the words "you" and "your" in the Ziebarth policy reads as follows:

> The words *you* and *your* refer to the person or persons named in the Declarations and *your* spouse if a resident of *your* household.

*Id.*

**4.** The definitions section of the McPhee policy—
DEFINITIONS
Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household, and "we," "us" and "our" refer to the Company indicated in the Decla-

rations. In addition, certain words and phrases are defined as follows:

     *    *    *    *    *    *

3. "insured" means you and the following residents of your household:
   a. your relatives;
   b. any other person under the age of 21 who is in the care of any person named above.

tracks almost verbatim that contained in the policy at issue here. *Id.*

pose a residency requirement on a named insured. Hence, the plain language of the policy excluded from coverage liability for Linda's death.

In other words, in *McPhee* the court declined to strip Linda of her insured status by creating separate policies for each named insured and then looking to the policy definitions as if the insured claiming coverage were the only insured named in the policy declarations so that another person could be an additional insured only through residence in the household of that named insured.[5] "You" and "your" refer to both spouses who are named insureds and their separation and acquisition of separate residences does not cause either spouse to lose the status of insured. Neither does it cause "you" or "your" to become singular so as to deprive the children who live with one or the other spouse of their status as additional insureds. Had Thomas and Joseph been the perpetrators rather than the victims here, there can be no question that they would have been insureds entitled to the protection of their parents' homeowner's policy. Had Robert been their victim rather than the perpetrator, there can be no question that claim for his injury or death would have been excluded. Nevertheless, the boys would have been entitled to the protection of the policy in the event of injury to someone else. The policy should not be misconstrued to deprive the named insureds' children of their status as additional insureds in order to avoid the impact of a perfectly clear exclusion from coverage. Accordingly, I would affirm the judgment entered by the trial court and affirmed by the court of appeals.

SIMONETT, Justice (dissenting).

I join Justice COYNE's dissent.

TOMLJANOVICH, Justice (dissenting).

I concur in the dissent of Justice COYNE.

5. Although it is not apparent from the opinion, the McPhee policy contained a severability clause, and *McPhee* may not be distinguished on that ground.