[No. D049449. Fourth Dist., Div. One. Nov. 21, 2007.]

DARCIE A. BJORK, Plaintiff and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY et al., Defendants and
Respondents.

2

COUNSEL

John L. Staley for Plaintiff and Appellant.

Hughes & Nunn, Randall M. Nunn and E. Kenneth Purviance for Defendants and Respondents.

OPINION

**IRION, J.**—In this opinion we consider an appeal by Darcie A. Bjork from the trial court's order granting summary judgment in favor of State Farm Fire

and Casualty Company and State Farm General Insurance Company (collectively, State Farm). Bjork sued State Farm to recover under the terms of homeowners insurance policies issued to Bjork's mother, against whom Bjork obtained a stipulated judgment in the amount of $4.5 million for negligence in failing to prevent sexual molestation by Bjork's father.

■ As we will explain, we agree with State Farm that because Bjork was a resident of her mother's home at the time she was injured by the alleged molestation, the terms of the applicable policies exclude coverage for her mother's personal liability. Accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

In the underlying action, Bjork sued her mother, Carol D. Fergerson (Carol), alleging that Carol was liable for negligence because she did not prevent Bjork from being molested by Bjork's father and Carol's husband, Melvin E. Fergerson (Melvin).[1]

Bjork, who was born in 1977 and resided in California with Carol and Melvin until at least 1997, alleged that she was sexually molested by Melvin from the age of approximately two until she was a teenager in 1991 or 1992.[2] In the underlying action, she alleged that Melvin had "a long standing history of sexual abuse of children," and Carol "knew or should have known that [Bjork] was being sexually molested," yet "failed to take appropriate steps to protect [Bjork] from being molested." Bjork alleged that because of Carol's negligence, she suffered damages including "emotional distress, anxiety, including physical related symptoms such as panic attacks," and suffered other physical injuries due to the molestation, including physical trauma and offensive touching.

State Farm issued a series of homeowners insurance policies to Melvin and Carol from 1987 to 2000 for their successive homes in California.[3] State Farm also issued a series of homeowners insurance policies to Carol

---

[1] We refer to the Fergersons by their first names for the sake of clarity. By doing so we intend no disrespect.

[2] In a declaration filed in opposition to State Farm's motion for summary judgment, Bjork diverged from the allegations in her complaint by claiming that she was molested until 1994, not until 1991 or 1992.

[3] Specifically, State Farm Fire and Casualty Company issued the homeowners policies from March 1987 to November 1997, and State Farm General Insurance Company issued the homeowners policies from November 1997 to April 2000.

individually from 2000 to 2005 for her home in the State of Washington, where she lived after she separated from and divorced Melvin.[4]

After Bjork filed the underlying lawsuit, Carol requested that State Farm provide her with a defense in the underlying action and indemnify her from any liability pursuant to the personal liability coverage in the homeowners insurance policies that covered Melvin and Carol's homes in California and Carol's home in Washington.

State Farm denied coverage. With respect to the policies it issued to Carol in the State of Washington from 2000 to 2005, State Farm's claim representative in Washington denied coverage because the molestations, which, according to Bjork, had ceased in 1991 or 1992, occurred *prior* to the applicable policy period in 2000. With respect to the policies in effect between 1987 to 2000, State Farm's claim representative in California denied coverage based on an exclusion in the applicable policies stating that personal liability coverage[5] does not apply to "bodily injury to you or any insured within the meaning of part a. or b. of the definition of insured." The applicable policies, which identified Melvin and Carol as the named insureds, defined " 'insured' " as follows:

"4. 'insured' means you and, if residents of your household:

"a. your relatives; and

"b. any other person under the age of 21 who is in the care of a person described above."[6] State Farm stated that because Bjork was Carol's daughter and resided with her when the alleged molestation occurred, Bjork was considered an insured under the definition contained in the applicable policies, and the exclusion for injury to "any insured" accordingly applied. The exclusion relied on by State Farm to deny coverage to Carol is commonly known as the "resident relative exclusion." (See, e.g., *Afrasiabi v. State Farm Fire & Casualty Co.* (1999) 73 Cal.App.4th 1183, 1186–1187 [86 Cal.Rptr.2d 926]; *Kibbee v. Blue Ridge Ins. Co.* (1999) 69 Cal.App.4th 53, 57 [81

---

[4] Specifically, State Farm Fire and Casualty Company issued the homeowners policies that covered Carol for her residence in the State of Washington.

[5] According to the applicable policies, the coverage for personal liability applies "if a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence." The term " 'occurrence' " is defined as "an accident, including exposure to conditions, which results in: [¶] a. bodily injury; [¶] or b. property damage [¶] during the policy period. Repeated or continuous exposure *to the same general conditions is considered to be one occurrence.*"

[6] The policies defined " '[y]ou' " as the named insured shown on the declarations page. Melvin and Carol were the named insureds for the policies issued for their California residences, and Carol was the named insured for the policies issued for her Washington residence.

Cal.Rptr.2d 294]; *Utley v. Allstate Ins. Co.* (1993) 19 Cal.App.4th 815, 818 [24 Cal.Rptr.2d 1].)[7]

Bjork and Carol subsequently entered into a stipulated judgment in the underlying action in the amount of $4.5 million, and Bjork agreed not to execute the judgment against Carol's assets. In the stipulated judgment, Carol stated that she was assigning to Bjork any claims that she had against insurance companies for failing to provide her with a defense or indemnity in connection with the underlying lawsuit.

Bjork then filed this lawsuit against State Farm, alleging that State Farm improperly denied coverage to Carol for the underlying lawsuit. Attempting to recover from State Farm the amount of the stipulated judgment, Bjork asserted causes of action for (1) payment of the stipulated judgment based on the insurance policies' provisions for direct claims brought by judgment creditors of the insured; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; and (4) declaratory relief.

State Farm filed a motion for summary judgment, relying on the resident relative exclusion to establish that it was not obligated to provide coverage to Carol for the claims made against her by Bjork in the underlying lawsuit.[8] The trial court ruled that the resident relative exclusion applied, and it entered judgment in favor of State Farm. Bjork filed this appeal.

II

DISCUSSION

A. *Standards Governing Our Review of a Ruling on a Motion for Summary Judgment*

We review a summary judgment ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is

---

[7] State Farm also denied coverage with respect to any injuries occurring outside of the applicable policy periods.

[8] The motion also argued that summary judgment should be entered for State Farm General Insurance Company because its policies covered the period from 1997 to 2000, but the alleged molestation ceased in 1991 or 1992. The trial court declined to enter summary judgment in favor of State Farm General Insurance Company on this basis, explaining that "both defendants bring the motion for summary judgment and do not set forth separate issues for summary adjudication as to each defendant." The trial court thus treated the two entities as indistinguishable from each other for purposes of the motion, referring to them collectively as "State Farm" and stating that "there was a material issue of fact whether [Bjork's] bodily injuries were caused by an occurrence during the State Farm's various policy periods."

entitled to judgment as a matter of law. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94].) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Lenane v. Continental Maritime of San Diego, Inc.* (1998) 61 Cal.App.4th 1073, 1079 [72 Cal.Rptr.2d 121].) Thus, on appeal we apply the same three-step analysis used by the trial court. "We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue." (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].)

This appeal narrowly concerns the application of the provisions of the applicable insurance policies to undisputed facts. "The interpretation of an insurance policy as applied to undisputed facts . . . is a question of law for the [appellate] court, which is not bound by the trial court's construction." (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 590 [79 Cal.Rptr.2d 134].)

B. *Applicability of the Resident Relative Exclusion*

█ The sole issue presented for our resolution is whether the resident relative exclusion bars coverage for Carol's liability to Bjork in the underlying action. A resident relative exclusion, such as the exclusion at issue here, has long been held to be an enforceable exclusion. (See *State Farm Fire & Cas. Co. v. Alstadt* (1980) 113 Cal.App.3d 33, 38–40 [169 Cal.Rptr. 593]; *State Farm Fire & Cas. Co. v. Clendening* (1983) 150 Cal.App.3d 40, 43 [197 Cal.Rptr. 377]; *Lumbermens Mut. Cas. Co. v. Vaughn* (1988) 199 Cal.App.3d 171, 180 [244 Cal.Rptr. 567] (*Lumbermens*).) As our Supreme Court has explained, " '[The] concept of a household exclusion is a common one which has long enjoyed judicial support.' " (*Farmers Ins. Exchange v. Cocking* (1981) 29 Cal.3d 383, 389 [173 Cal.Rptr. 846, 628 P.2d 1] (*Cocking*).) The exclusion is premised on the principle that an "insurance carrier need not insure risks arising from intrafamily torts unless it chooses to do so." (*Clendening*, at p. 43.)

Bjork presents several arguments for the inapplicability of the resident relative exclusion to this case. First, she argues that the resident relative exclusion should not apply because the reasons behind the exclusion are not implicated in this case. Second, she argues that because the applicable insurance policies do not contain an exclusion for sexual molestation, the resident relative exclusion should not apply. Third, she argues that application of the resident relative exclusion violates public policy. Fourth, she argues

that the severability clause in the applicable insurance policies makes the exclusion inapplicable. Finally, she argues that the insurance policies in effect after 1997, when she ceased to reside with Carol and Melvin in 1997, provide coverage despite the resident relative exclusion because she ceased to be a resident relative of an insured, and she allegedly continued, after 1997, to incur physical injuries from the molestation. We now turn to an analysis of each of Bjork's arguments.

### 1. *The Exclusion Applies Regardless of Evidence of Collusion*

We first evaluate Bjork's argument that the resident relative exclusion should not apply in this case because the reasons behind the exclusion are not implicated in this case. As Bjork points out, case law has explained that an insurance carrier may choose to include a resident relative exclusion in an insurance policy " 'to prevent suspect inter-family legal actions which may not be truly adversary and over which the insurer has little or no control. Such an exclusion is a natural target for the insurer's protection from collusive assertions of liability.' " (*Cocking, supra*, 29 Cal.3d at p. 389.) Bjork argues that there is no evidence of collusion in this case, and thus the exclusion should not apply.

We reject this argument because the plain language of the applicable insurance policies does not limit the exclusion to instances in which collusion between family members is present. Instead, the applicable policies clearly and unambiguously exclude coverage for *every* personal liability claim involving injury to a relative who resides with a named insured.[9] (See *Lumbermens, supra*, 199 Cal.App.3d at p. 181 [applying the resident relative exclusion although expressly declining to decide whether actual collusion occurred].)

Although Bjork relies on *Cocking*'s discussion of collusion to support her argument (*Cocking, supra*, 29 Cal.3d at p. 389), *Cocking* does not advance Bjork's position. *Cocking* does not purport to interpret the resident relative exclusion to apply only in cases where collusion actually exists. Instead, it merely explains that insurance carriers choose to exclude liability coverage for claims made by resident relatives because such claims might be collusive.

### 2. *The Absence of a Sexual Molestation Exclusion Does Not Make the Resident Relative Exclusion Inapplicable*

Bjork argues that "[t]he failure of the homeowner policies . . . to have a sexual molestation exclusion suggest[s] that the policies did not intend to

---

[9] We express no view on whether the record indicates the existence of collusion by virtue of the $4.5 million stipulated judgment and Bjork's covenant not to execute the judgment against Carol.

exclude such a risk from coverage." In support of her argument, Bjork cites a decision of the Utah Supreme Court, holding that a personal excess liability policy provided coverage for personal injury stemming from sexual assaults when the policy did not include an exclusion for sexual molestation in the definition of "personal injury." (*Benjamin v. Amica Mutual Ins. Co.* (2006) 2006 UT 37 [140 P.3d 1210, 1218] (*Benjamin*).)

Bjork's argument lacks merit, and the case that she cites is inapplicable. Because the resident relative exclusion applies, it is irrelevant that the policies lack an express exclusion for sexual molestation. The resident relative exclusion is clear and unambiguous. It applies whenever an insured seeks coverage for personal liability caused by physical injury to the relative resident of a named insured. The language of the exclusion plainly contains no exception for injuries to a resident relative caused by sexual molestation. The Utah Supreme Court's decision in *Benjamin* is inapplicable because the victims of the sexual assaults in that case were the insured's coworkers, not resident relatives. (*Benjamin, supra,* 140 P.3d at p. 1212.) Thus, the resident relative exclusion was not at issue in *Benjamin,* and *Benjamin* has no bearing on the issue of whether a resident relative exclusion applies when an insurance policy lacks an express exclusion for sexual molestation.

3. *Public Policy Does Not Prevent the Application of the Resident Relative Exclusion in This Case*

Bjork argues that applying the resident relative exclusion in this case would violate public policy because the Legislature enacted a law reviving, for a period of one year, claims against individuals who negligently failed to stop childhood sexual abuse, when the statute of limitations otherwise already would have expired. (Code Civ. Proc., § 340.1, subd. (c).) Bjork argues that this statute expresses "a legislative intent to provide financial redress for victims of such childhood sexual abuse," and thus we should not apply the resident relative exclusion to deny Carol insurance coverage for her liability to Bjork.

We reject Bjork's argument. Code of Civil Procedure section 340.1, subdivision (c) expresses an intent to allow victims of childhood sexual abuse to bring otherwise expired claims. It does not deal with the subject of insurance coverage. Accordingly, we perceive nothing in the statute that would indicate a legislative policy against the application of the resident relative exclusion to instances of sexual molestation.

4. *The Severability Clause in the Policies Does Not Preclude Application of the Resident Relative Exclusion*

Each of the State Farm policies contain a severability clause which states, "This insurance applies separately to each insured. . . ." Bjork claims that the

severability clause creates an ambiguity with respect to whether the resident relative exclusion applies, and that we should resolve the ambiguity in favor of coverage. (See *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253] ["In the insurance context, we generally resolve ambiguities in favor of coverage"].)

Bjork argues that because of the severability clause, we should disregard the fact that she is an insured under the policy's definition of that term, and consequently find that the relative resident exclusion does not apply. To understand Bjork's argument, we must first focus on the language of the policy provisions that comprise the resident relative exclusion. As we have explained, the policies exclude personal liability coverage for "bodily injury to you or any insured within the meaning of part a. or b. of the definition of insured." As we have also explained, the term " 'insured' " as used in this exclusion has the following meaning: "4. 'insured' means you, and if residents of your household: [¶] a. your relatives; and [¶] b. any other person under the age of 21 who is in the care of a person described above." Together, these provisions make up the resident relative exclusion. Accordingly, to find that the relative resident exclusion applies in this case, we must find that Bjork satisfies the definition of an insured under the policy. Bjork argues that if, relying on the severability clause, we were to disregard the fact that Bjork satisfies the definition of an insured, then the resident relative exclusion would be inapplicable.

We reject Bjork's argument because, as we will explain, the severability clause does not allow us to disregard the fact that Bjork satisfies the definition of an insured under the policy. For her interpretation of the severability clause, Bjork relies on Justice Baxter's concurring and dissenting opinion in *Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 767 [110 Cal.Rptr.2d 844, 28 P.3d 889] (*Safeco*). *Safeco* did not involve a resident relative exclusion, but instead involved an exclusion for claims " 'arising out of any *illegal* act committed by or at the direction of an insured.' " (*Id.* at p. 763 (maj. opn. of Kennard, J.).) Justice Baxter took the position that because of the policy's severability clause, the exclusion should be evaluated separately as to each insured, so that coverage would be afforded to an insured who did *not* commit an illegal act although another insured *did* commit an illegal act. (*Id.* at pp. 771–778 (conc. & dis. opn. of Baxter, J.).)

As support for his position, Justice Baxter explained that some cases have concluded that "when a multiparty liability insurance policy contains a severability provision, the effect is to extend both the policy's coverage, and its exclusions, *individually*, to *each* insured, as if he or she were the *only* insured, subject to policy limits. Under this rule, exclusions from coverage are *personal* and may not be imputed from one insured to another, even

where . . . language internal to an exclusionary clause, viewed in isolation, could be read to withdraw coverage from all insureds for the excludable conduct of one." (*Safeco, supra,* 26 Cal.4th at pp. 776–777 (conc. & dis. opn. of Baxter, J.).) Under the cases cited by Justice Baxter, "an exclusion must be considered solely from the standpoint of the *insured seeking coverage,* so that facts which would preclude coverage of a particular insured do not necessarily preclude coverage for the related liability of another." (*Id.* at p. 772.)

Justice Baxter cites several cases from other jurisdictions as examples, including two cases involving the interplay of a severability clause and the resident relative exclusion, and Bjork relies on those cases for her argument.[10] (*Safeco, supra,* 26 Cal.4th at pp. 773–774 (conc. & dis. opn. of Baxter, J.).) In *Fournelle, supra,* 472 N.W.2d 292, a husband who was a named insured under a homeowners policy together with his wife, but who did not reside in the family home, shot and killed his two teenage sons and himself in the wife's house. (*Id.* at p. 293.) The wife sued the husband's estate for wrongful death. (*Ibid.*) The insurer contended that because the homeowners policy contained a resident relative exclusion, it did not provide coverage for the husband's liability. (*Id.* at pp. 293–294.) *Fournelle* concluded that the severability clause required that the exclusion be assessed only from the standpoint of the husband, as it was the husband's estate that was seeking coverage, and that the wife's coresidence with the sons should be disregarded. (*Id.* at p. 294.) Because the sons did not reside with the husband at the time they were shot, the resident relative exclusion did not apply, even though the sons *did* reside with their mother who was also a named insured under the policy. (*Ibid.*) *Fournelle* explained that "severability demands that policy exclusions be construed only with reference to the particular insured seeking coverage." (*Ibid.*)

Similarly, in *Keegan, supra,* 209 F.3d 767, a husband and wife were named insureds on a homeowners policy for a home in which the wife lived together with the couple's daughter and granddaughter. (*Ibid.*) The husband and wife were separated, and the husband no longer resided in the home. (*Ibid.*) The husband was killed and the granddaughter was injured, allegedly due to the husband's negligence, and the daughter sued to recover from the husband's estate on behalf of the granddaughter. (*Id.* at pp. 767–768.) *Keegan* concluded that the homeowners insurance policy provided personal liability coverage to the husband's estate despite a resident relative exclusion. Because of the policy's severability clause, *Keegan* evaluated the resident

[10] Bjork also cites other case law that follows the approach described by Justice Baxter. We focus on *American Nat. Fire Ins. v. Fournelle Est.* (Minn. 1991) 472 N.W.2d 292 (*Fournelle*) and *State Farm Fire & Cas. Ins. v. Keegan* (5th Cir. 2000) 209 F.3d 767 (*Keegan*) because they are the two cases involving a resident relative exclusion.

relative exclusion only with respect to whether the *husband* had resided with the granddaughter at the time of her injury. (*Id.* at p. 770.)

Bjork advocates that if we were to apply the severability clause to this case as in *Fournelle* and *Keegan*, we would conclude that she is not an insured within the definition of the policy and that the resident relative exclusion accordingly does not apply. We disagree. Examining the resident relative exclusion *only* from Carol's standpoint and disregarding Bjork's relationship with any named insured other than Carol, as directed by *Fournelle* and *Keegan*, we easily come to the conclusion that Bjork *is* an insured and that the resident relative exclusion accordingly applies.[11] Specifically, Bjork was a relative residing in the household of Carol—a named insured who is seeking coverage—when the molestation occurred. Accordingly, Bjork is an insured under the policy when the policy is viewed purely from the standpoint of Carol as the named insured. Because Bjork is an insured under the definition contained in the policy, the resident relative exclusion applies.[12]

5. *The Allegedly Continuing Nature of Bjork's Injuries Does Not Trigger Coverage Under the Policies Covering the Period After Bjork Ceased to Reside with Carol*

Some of State Farm's policies were issued after Bjork ceased to reside with Carol in 1997 (the post-1997 policies). Bjork claims that Carol should be afforded coverage under the post-1997 policies, despite the resident relative exclusion, because Bjork did not reside with Carol during those policy periods.[13]

The difficulty with this argument is that, according to Bjork, the molestation ceased no later than 1994. Because the liability coverage in the policies is for bodily injuries "caused by an occurrence," and an occurrence is defined

---

[11] We apply the rule advocated by Justice Baxter in *Safeco*, and described in *Fournelle* and *Keegan*, only to show that even *if* the rule were applied, the relative resident exclusion would still exclude coverage in this case. We do not take a position with regard to whether the rule advocated by Justice Baxter should be followed, which appears to be an issue on which courts have expressed differing opinions. For example, *California Casualty Ins. Co. v. Northland Ins. Co.* (1996) 48 Cal.App.4th 1682 [56 Cal.Rptr.2d 434]—which Justice Baxter attempted to limit in *Safeco, supra,* 26 Cal.4th at pages 775–776 (conc. & dis. opn. of Baxter, J.)—rejected the argument that "an exclusion based on the act of 'an insured' precludes coverage of a different insured where there is a severability clause," explaining that courts in other jurisdictions have come to differing conclusions on the issue. (*Northland,* at p. 1697.)

[12] Contrary to Bjork's argument, we perceive nothing in the text of the severability clause itself, or in any case law interpreting severability clauses, supporting the conclusion that the severability clause operates to delete from the definition of "insured," as used in the resident relative exclusion, all persons except for the person claiming coverage.

[13] Although Bjork raised this argument below in opposition to State Farm's summary judgment motion, the trial court did not expressly address the argument in its ruling.

as "an accident, including exposure to conditions, which results in: [¶] a. bodily injury; [¶] or b. property damage [¶] *during the policy period*," to establish coverage under the post-1997 policies, Bjork would have to establish that she incurred bodily injury during the policy period (i.e., after 1997), and that the injury was caused by an *earlier* molestation.

■ Bjork relies on our Supreme Court's decision in *Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 685–686 [42 Cal.Rptr.2d 324, 913 P.2d 878], which decided that when an insured's liability stems from continuous or progressively deteriorating bodily injury, such as from the gradual release of pollutants, an "occurrence" exists for the purpose of a liability insurance policy, during the entire progression of the injury. *Montrose* stated that "[t]here is no requirement that the . . . conditions giving rise to the . . . injury, themselves occur within the policy period in order for potential liability coverage to arise," as long as the injury itself occurs during the policy period. (*Id.* at p. 686.) Bjork argues that although the molestation ceased in 1994, she continued to suffer bodily injury as a result of the molestation, even after 1997. Specifically, she points to her declaration, in which she describes the following injury: "I suffered emotional and physical injury from my father's molestation of me. The emotional and physical injury occurred both at the time of the molestation and up through the present time. . . . After I moved from [my] parents['] residence, I continued to suffer emotionally and physically from my father's molestation of me. I had problems with drinking alcohol, mood swings, and erratic periods which were induced by stress. The erratic periods caused me extreme cramping and discomfort. These problems have continued to the present."

We reject Bjork's argument because she has not identified a continuous or progressively deteriorating bodily injury in the post-1997 time period that resulted from the molestation. Instead, she has described only the emotional impacts of the molestation, including stress, which in turn impacted her body by causing irregular periods. However, according to Bjork, it was the emotional *stress*, not the *molestation* that caused the irregular periods. The State Farm policies clearly exclude "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury" from the definition of "bodily injury." We thus conclude that there is no coverage under the post-1997 policies because Carol's liability to Bjork is not based on any bodily injury to Bjork during the post-1997 policy periods that Carol brought about by failing to stop the earlier molestation.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 13, 2008, S159569.